9696. SWAFFORD v. KEATON *et al.*

1. "The first amendment to the constitution of the United States denies to Congress the power to make any law respecting an establishment of religion or prohibiting the free exercise thereof. [Civil Code (1910), § 6684.] That instrument contains no limitation on the powers of the State in this particular, but every State in the Union has in its con-

stitution a provision denying to the civil authorities the right to control or interfere in any way in matters purely ecclesiastical. The people of no State in the Union, as a political entity, have any creed or religion. The people of the United States, as a political entity, have no creed or religion. Each individual within the jurisdiction of the United States, whether he be within the limits of a State or elsewhere, has a right to determine for himself all of those questions which relate to his relation to the Creator of the universe. No civil authority can coerce him to accept any religious doctrine or teaching, or restrain him from associating himself with any class or organization which promulgates religious teaching. Whether he shall adopt any religious views, or, if so, what shall be the character of those views, and the persons with whom he shall associate in carrying out the particular views, are all questions addressed to his individual conscience, which no human authority has the right, even in the slightest way, to interfere with, so long as his practices in carrying out his peculiar views are not inconsistent with the peace and good order of society." *Mack* v. *Kime*, 129 *Ga.* 1, 16 (58 S. E. 184, 24 L. R. A. (N. S.) 675).

2. "When an individual becomes a member of a religious organization, his uniting with it is his voluntary act, and he becomes bound by the rules and usages of the organization. . . As to all matters purely ecclesiastical he is bound by the decisions of the tribunal fixed by the organization to which he belongs, as an arbiter to determine the disputed questions relating to matters peculiarly within the province of the organization." *Mack* v. *Kime*, supra. Thus, the courts of law must not and can not seek to disturb, alter, or interfere with judgments thus rendered upon matters of church doctrine or discipline.

3. (a) The law recognizes the necessity and propriety of an investigation by a church of alleged misconduct on the part of its members; and charges which may be preferred either orally or in writing in the bona fide discharge of such a duty are to be taken as privileged communications, and will be thus accounted when made in good faith, even though they should in fact be entirely erroneous.

(b) But if such charges are actually known to be false at the time they are entered, and are maliciously and wilfully made, with the purpose and intent of injuring another, they can not be regarded as privileged, and the occasion and circumstances of their making will afford no protection. *Etchison* v. *Pergerson*, 88 *Ga.* 620 (15 S. E. 680); Civil Code (1910), § 4437.

4. Under the foregoing rulings, it was error to sustain the defendants' demurrer and dismiss the petition.

DECIDED JANUARY 15, 1919.

Action for damages; from Douglas superior court—Judge Bartlett. March 28, 1918.

W. H. Swafford sued W. R. Keaton, M. M. Daniel, D. W. Daniel, J. T. Lee, and Thomas Carnes, in Douglas superior court, claiming damages in the sum of $10,000. Petitioner alleges as follows: He had been a member in good standing of Cold Springs Primitive

Baptist Church, located in said county. On the Saturday before the first Sunday in April, 1917, a regular preaching day for said church, the Reverend Thomas Carnes announced the call of a church conference; whereupon, without any previous notice to petitioner, the clerk informed the said Carnes that a certain charge had been handed in against the said W. H. Swafford, and in the presence of the public assembly, including petitioner, his wife, their sons and daughters, neighbors, and friends, as well as many members of said church, proceeded to read said charge, in form as follows: "After careful investigation of the report, we the undersigned Brothering of the Primitive Baptist Church at Cold Springs deem it our duty to present a charge against Brother W. H. Swafford for making what we consider a false affidavit to avoid paying the sum of $1.75 court cost in making an appeal in a lawsuit between him and J. T. Duncan from the Justice Court to the Superior Court. This being what is usually termed a pauper oath. Signed: W. R. Keaton, W. M. Daniel, D. W. Daniel." While the paper thus read was signed by only three of the defendants, its preparation and publication as aforesaid was the joint and several action of all five of the defendants named, who, it is alleged, had previously conspired together to write and publish the same. Although petitioner then and there arose and disclaimed any previous notice that the charge would be preferred, and attempted to be heard in explanation and defense, and sought to have the matter investigated before it came up for consideration, the said Carnes would not permit any discussion in his behalf, and made the announcement that the church was going to exclude petitioner, and that any member of the church who voted to retain him would be likewise excluded. Upon the vote being then and there taken six members voted to retain petitioner, and twenty-eight, acting under the intimidation of the said Carnes, voted to exclude him, whereupon the said Carnes announced that such six members would be given until the next regular meeting day to make acknowledgement for having voted to retain petitioner, and that in the event this was not done, they would be excluded. Petitioner alleges that the charge as prepared and read was knowingly and maliciously false; that it was intended by defendants to injure and damage him, and that it resulted in the defamation of his character and standing, and exposed him to public hatred, con-

tempt, and ridicule, all to his injury and damage in the amount claimed.

The defendants filed a demurrer to the petition on the following grounds: "1. This court has no jurisdiction of said cause, same being privilege matters growing out of and concerning the deliberations of a church body and tribunal, no property right being involved. 2. The petition shows on its face that this question and all matters complained of transpired in an ecclesiastic court and tribunal, said tribunal being within its power, authority, and jurisdiction, and only a question of doctrines of a church and crime and discipline concerning and involving such questions, this court has no jurisdiction in such matters." The court sustained the demurrer and dismissed the petition, and the plaintiff excepted.

*James & Bedgood,* for plaintiff.

*J. H. McLarty, J. R. Hutcheson, Astor Merritt,* for defendants.

JENKINS, J. (After stating the foregoing facts.) The rules of law which in our opinion touch upon and govern this case are set forth in the headnotes. In a case of this particular character it may not, however, be amiss to state plainly that, the judgment of the court below having been based purely upon a question of law as raised on demurrer, neither the judgment of that court nor the judgment of this court either expresses or intimates any opinion whatever as to what is the truth as to any issue of fact involved.

*Judgment reversed. Wade, C. J., and Luke, J., concur.*