22920. SUMMEROUR *v.* MEDLIN.

Decided February 5, 1934.

*Roscoe Pickett, Joseph M. Lang,* for plaintiff.
*J. G. B. Erwin, T. H. Lang,* for defendant.

MacIntyre, J. Clay Summerour brought an action against J. U. Burkhart and L. E. Medlin, of Gordon county, and B. J. Robertson, of Walker county. Process issued against all three defendants, but only Medlin was served with process. "After the case had been sounded and a jury stricken, counsel for plaintiff moved the court to direct a verdict for the plaintiff against the defendant for the full amount sued for, on the ground that said case was in default." The court overruled this motion, and the plaintiff excepted. The plaintiff then testified in his own behalf and "rested his case." Counsel for the defendant then moved for a nonsuit. The court said: "I am disposed to the idea, under the evidence, that the defendant is entitled to a nonsuit." The record here states that "before ruling otherwise on motion for a nonsuit, Mr. Pickett asked

permission to introduce supplementary evidence, that he had in-advertently omitted to introduce copy of bond." The court said: "I believe I will grant the motion to nonsuit." Thereupon counsel for plaintiff "offered in evidence copy of bond as follows: 'Georgia, Gordon County. We, B. J. Robertson as principal and L. E. Medlin as surety hereby acknowledge themselves jointly and severally bound unto J. U. Burkhart in the sum of $711.50. Signed with our hands and sealed with our seals this October 31, 1931.' The condition of the above bond is this: that, whereas the said J. U. Burkhart is due one Clay Summerour the sum of $355.75 for hauling rock on State Route No. 57, said State and county, and whereas the said Clay Summerour has signed his time by written order to the said J. U. Burkhart requesting that same be paid to one certain B. J. Robertson; and whereas the said Clay Summerour has since signing said order verbally requested the said J. U. Burkhart to refrain from paying said sum to B. J. Robertson, and in order to get the said J. U. Burkhart to pay said sum to said B. J. Robertson, this bond is made; and now should the said J. U. Burkhart never have to pay the said Clay Summerour said sum or any part thereof, then this bond to be void; else to remain in full force.

"(Signed) 'B. J. Robertson (Seal )    L. E. Medlin, (Seal )'"

The court excluded said copy-bond "on the ground that he [plaintiff] had already rested his case," and plaintiff excepted. "After the court had indicated that he would grant a nonsuit, but before he had signed order granting same," counsel for plaintiff again moved for the direction of a verdict. The court overruled this motion, and the plaintiff excepted.

Did the court commit reversible error in overruling the first motion to direct a verdict? Omitting the formal allegations, and the names of the parties, which have been stated above, the petition, by paragraph avers that:

"2. Plaintiff contracted to furnish and did furnish to defendant Burkhart one certain truck, and did certain hauling of rock and road materials used in construction of section of road near Fairmount; and did comply with said contract and do hauling and have same done under said contract, and earned the sum of $355.75. Defendant Burkhart owed plaintiff this sum for hauling up to, and prior to, October 31, 1931. Defendant Burkhart hired plaintiff to do said hauling, accepted the work, and admitted that he was due this sum of $355.75 for the same.

"3. Plaintiff has demanded that Burkhart pay him the sum aforesaid, and said demand was refused, although he admitted the contract with plaintiff, that the work was done according to contract, and that this sum was due for the work, but he refused to pay plaintiff for the same as alleged hereinafter.

"4. Plaintiff shows that defendants Robertson and Medlin conceived the scheme of defrauding plaintiff of sum due him by Burkhart, and they did persuade and procure Burkhart not to pay plaintiff; and that all three defendants wrongfully and fraudulently and maliciously conspired together to withhold said money from plaintiff, to breach the contract between plaintiff and Burkhart; and the three defendants did wrongfully, fraudulently, and maliciously breach the said aforesaid contract, and in doing so they did all three act in concert and conspire together, and the said Burkhart did breach and break his said contract, and the other two defendants did induce him to, and did aid him in breaking it, and all three defendants did violate the rights of plaintiff and commit a tort against him and are each and all jointly and severally liable to him on account thereof in sum of $355.75, and interest thereon since October 31, 1931.

"5. Plaintiff further shows and pleads as a matter of inducement that Robertson and Medlin did enter into an alleged writing or bond in order to consummate their purpose of securing breach of his said contract, and delivered same to said Burkhart; and plaintiff shows that this is further evidence of the conspiracy among the three defendants to breach his contract. Said writing is dated on or about October 31, 1931, for the sum of $711.50, and recites that Burkhart is due plaintiff $355.75 for hauling rock on State route number 57, said State and county. The recitals in said writing or bond show conclusively that Burkhart does owe plaintiff the amount claimed, that all three defendants knew of said contract, and that Burkhart owed him said sum, and that they all three did wilfully, wrongfully and maliciously conspire and collude together to secure and commit a breach of said bond, and to damage plaintiff in said sum. Defendants are hereby required to have and produce said bond or writing on the trial of this case to be used as evidence by the plaintiff."

The petition concluded with the prayer that "plaintiff recover of defendants the sum of $355.75, besides interest from October 31, 1931, same to be joint and several as to all defendants."

It is contended by plaintiff in error that under *Luke* v. *Dupree,* 158 *Ga.* 590 (124 S. E. 13), the foregoing petition sets out a cause of action. He further contends that the damages were liquidated, and that, since the case was in default at the trial term, he was entitled to a verdict and judgment for the full amount claimed. In the *Luke* case the court said: "It is actionable maliciously or without justifiable cause to induce one to break his contract with another to the damage of the latter." Numerous cases, including that of *So. Ry. Co.* v. *Chambers,* 126 *Ga.* 404 (55 S. E. 37, 7 L. R. A. (N. S.) 926), were cited as authority for the rule above stated. The court then goes on to say: "The theory of this doctrine is that the parties to a contract have a property right therein, which a third person has no more right maliciously to deprive them of, or injure them in, than he would have to injure their property. Such an injury amounts to a tort for which the injured party may seek compensation by an action in tort for damages." In the same case (bottom of page 597) the court said: "In the instant case the plaintiffs do not contend that the conspiracy of the defendants to break the contracts involved furnishes a cause of action; but they do contend that the breaches of these contracts were unlawful, and that, when the defendants conspired to commit these breaches and the contracts were broken in pursuance of such conspiracy, a cause of action accrued to them." Headnote 1 of that case contains this statement: "The term 'maliciously' means any unauthorized interference or any interference without legal justification or excuse; and ill will or animosity is not essential." In that case the conduct and acts of the joint defendants were alleged with considerable detail, and the court held that the petition set out a cause of action. However, the court said (p. 598): "Charges of fraud and conspiracy can not be made in general terms, without specific acts and facts being alleged. . . The petition in this case alleges that the defendants conspired to cheat and defraud the plaintiffs. This general allegation, standing alone, would not be sufficient; and the petition would be subject to general demurrer if this naked averment were the only one made on this subject. But the petition sets out the specific facts upon which this general charge is based; and for this reason the petition does not violate the principle which provides for fraud and conspiracy to be specifically pleaded."

The Civil Code (1910), § 5662, provides: "In all cases, except

actions for unliquidated damages and suits on unconditional contracts in writing, in the several courts of this State, where the writ of process has been served, as the law directs, on the defendant, and there is no defense made by the party sued, either in person or by attorney, at time the case is submitted for trial, the case shall be considered in default, and the plaintiff shall be permitted to take a verdict as if each and every item and paragraph were proved by testimony." Immediately after the section which gives the defendant the right to open the default and file his defense within thirty days after the entry of "default" upon payment of accrued costs, comes § 5655 of the Civil Code of 1910, which reads as follows: "If the default is not opened as provided in the preceding section, the plaintiff shall be entitled, at the trial term, to take a verdict or judgment as the case may require." In 14 C. J. 175, § 387, this rule is laid down: "Defendant's default operates as an admission only of those material facts which are well and properly pleaded in plaintiff's declaration or complaint." Headnote 1 of the case of North American Accident Ins. Co. *v.* Moreland, 60 Fla. 153 (53 So. 635), reads: "A judgment by default properly entered against parties *sui juris* operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration. Conclusions of law, and facts not well pleaded and forced inferences are not admitted by a default judgment." We quote next from Schueler *v.* Mueller, 193 Ill. 402 (61 N. E. 1044): "It is not sufficient in a declaration to allege generally the duty of the defendant, but the pleader must state facts from which the law will raise a duty, and must show an omission of such duty and a resulting injury." In *Sheffield* v. *Causey,* 12 *Ga. App.* 588, 593 (77 S. E. 1077), Judge Pottle, speaking for the court, quoted with approval from Gould's Pleading, 505, as follows: "A judgment by default cures no other defects than those of form;" and also said: "The reason why the rule in reference to curing a defective pleading does not apply to cases of judgments by default is that in such cases the introduction of proof is not required, and the judgment therefore would not show that the plaintiff had made out a case upon which he was entitled to recover." In *Lenney* v. *Finley,* 118 *Ga.* 427 (2) (45 S. E. 317), it was said: "Where judgment by default is rendered in a case in

which the damages are not liquidated, the defendant is thereby concluded as to the truth of all the material allegations of the petition save as to the amount of the damages. . ." It will be noted that the defendant is concluded as to the truth of the *material allegations* of the petition. In construing the pleading act of 1893 in *Hight* v. *Barrett,* 94 *Ga.* 792 (21 S. E. 1008), the Supreme Court said that "when no defence whatever is filed, every essential averment of fact distinctly and plainly made in plaintiff's petition is to be taken as *prima facie* true, because not denied by answer, nor any excuse rendered for failing to deny." This rule was applied in *Dugas* v. *Hammond,* 130 *Ga.* 87 (60 S. E. 268). It thus appears that the Georgia law is in line with the rule laid down in 34 C. J. 175, § 387, supra, and the authorities hereinbefore cited from other States.

The gist of the plaintiff's case is that the defendant Medlin conspired with others to deprive the plaintiff of his rights under his contract, and that the successful accomplishment of their purpose constituted the conspirators, including Medlin, tort-feasors. The alleged conspiracy does not furnish the cause of action, but, nevertheless, the contract alleged to have been broken was between Summerour and Burkhart, and the conspiracy had to be alleged in order to connect Medlin with the tort charged. An examination of paragraph 4 of the petition shows that the allegations as to fraud and conspiracy are extremely general and without basic facts to rest upon. Neither do we think that paragraph 5 of the petition sets out any facts to show that Medlin entered into any conspiracy to bring about the breach of the contract between Summerour and Burkhart. In short, we do not think that the petition contains *allegations of fact* to show that Medlin induced Burkhart to break said contract, and we hold, under the authorities cited, that the trial judge did not err in overruling the motion to direct a verdict.

Before addressing ourselves directly to the assignment of error upon the granting of the nonsuit, we shall briefly advert to the assignment complaining of the court's refusal to allow the copy-bond in evidence. In his petition the plaintiff gave notice to the *defendants* to produce the bond, but the bond was not produced, and a copy of it was offered in evidence. The bond appears to have been payable to Burkhart, and it appears reasonable to suppose that it was in his possession rather than in the possession of Medlin, the

obligor in the bond, and the only defendant served with process. Furthermore, the copy-bond was only offered in evidence after the judge had indicated his purpose to grant a nonsuit. Under this state of facts, we hold that the court did not err in rejecting the copy-bond.

Clay Summerour, sworn in his own behalf, testified as follows: "I am the plaintiff. I entered into a contract with one of the defendants in this case, J. U. Burkhart, on or about September 3, 1931, to haul rock in the construction of a certain route of State Highway No. 59, near Fairmount, Georgia, in this county, and was to receive $1 per hour for use of my truck. My truck operated under this contract from September 3, to October 31, 1931. After taking out for gas and oil used, Mr. Burkhart owed me, and admitted that he owed me, $355.75. Mr. Medlin went on his bond. I did not owe Mr. Medlin any money. I bought this truck from B. J. Robertson, but I did not owe him anything on it at that time. I did not give Robertson an order for this money. I don't know how they fixed it about the bond—Mr. Burkhart told me, just know what he told me. Mr. Medlin does not owe me anything, but he put up the bond. Medlin wrote me a letter to come over and make settlement on Tuesday, and I went on Wednesday in October, 1931, as he asked me to in his letter, and Medlin said B. J. Robertson had come up there and had claimed the money. B. J. Robertson is now dead, and J. U. Burkhart, the other defendant, is out of the State. He left before I got service on him. Medlin said Robertson had come and got the money. He said that Burkhart's trucks were getting some gas there, and he had money in the gas, and Burkhart had his part of the money out there and he had to get it. Mr. Burkhart told me that Mr. Medlin is the man that said Robertson got my money—said he could not get the money before he made the bond: Medlin told me that the bond was made to Burkhart and signed by Medlin. I have not seen that bond. He had to make a bond for it before he could get gas and oil. Mr. Medlin went on his bond. Instead of my getting this money, it went to Robertson. They owed me $355.75. I have not been paid a penny. Mr. Medlin has been paid for his gas and oil. I went to see Medlin and he had left. He wasn't where he promised to be, and I found out where the money went. He told me that Robertson come over there and wanted a settlement and he had to make settlement before he

could get the money for his gas and oil, and he signed the bond. He signed the bond with Robertson, Medlin did; and he did not have much to say about it, and I went to Mr. Pickett. Medlin told me he had to sign bond with Robertson to get pay for his gas and oil. Robertson owed Medlin, Burkhart owed me for work with the truck. As to who owed Medlin, it come out of our truck before he could get anything at all. The gas and oil had to be paid before we could get anything for the truck, and whatever Medlin got for gas and oil, that was to be paid first; and Robertson came up there and told Medlin he was ready to make bond: Medlin did not tell me that; that is the only way he could have got it. Burkhart was paying so much an hour for the hauling, and Medlin was furnishing some of the gas and oil, and under the contract it was to be paid for out of the proceeds of the hauling. Medlin told me he was in need of money and he signed the bond. Robertson was not running the truck: he sold me the truck. He had already got his money. Robertson was making the bond for Burkhart to get the money that Burkhart owed under the contract; and Burkhart told me he went on the bond to get the money for the gas and oil sold for that truck. Mr. Medlin was to be paid for the gas and oil out of the hire of the truck. Burkhart told me in my original arrangement with him he was to furnish gas and oil for the trucks hired, and fill his tanks once a day, and that Medlin was to be paid out of my time—what I derived from my truck. I have not been paid a penny of this money that is due me."

To our way of thinking the bond was indispensable to connect Medlin with the alleged conspiracy, and the bond was not in evidence. We do not think that the testimony of the plaintiff, the only witness testifying in the case, shows that Medlin, "maliciously or without justifiable cause," entered into a conspiracy to induce Burkhart to break his contract with Summerour to the damage of the latter. Therefore we hold that the trial judge did not err in granting the nonsuit. Having reached this conclusion, it seems unnecessary to state that the plaintiff's second motion to direct a verdict was properly overruled.

*Judgment affirmed. Broyles, C. J., concurs.*

GUERRY, J., dissenting. There being no plea or answer in the case, and the petition being properly paragraphed, the allegations of the petition are to be taken as true, and being thus taken, the

plaintiff is only required to prove his damages if they are unliqui-dated. *Caldwell* v. *Freeman,* 146 *Ga.* 469 (91 S. E. 544). A petition is sufficient to withstand a general demurrer if the defend-ant can admit all allegations of the petition and escape liability thereon. In *Seaboard Air-Line Ry. Co.* v. *Pierce,* 120 *Ga.* 230 (47 S. E. 581), it was said: "From the allegations of the petition it appeared that petitioner's husband was an employee of the defend-ant; that, while in the discharge of his duty as such, he was killed by the running of defendant's locomotive, and that he was, at the time, wholly without fault, and it was averred that such killing was 'negligent, wrongful, and inexcusable.' The defendant could not admit these allegations and escape liability." Such allegations as there made may have been subject to special demurrer, in that they did not allege the facts upon which the conclusions as to the acts of the defendants as negligence were based. The allegations may not have been well pleaded but the petition was sufficient to withstand a general demurrer. If it can be said that in spite of our statute with reference to defaults, which declares that "In all cases where the damages are not liquidated and a judgment by default is rendered, the plaintiff shall be required to introduce evi-dence and establish the amount of damages," and that "the defend-ant may contest the amount of such damages before the jury, with a right to move for a new trial in respect to such damages, and ·except as in other cases," the plaintiff may still be nonsuited be-cause he has not well pleaded his cause of action, then we think such statute is rendered nugatory. Such a ruling would render a default judgment a mere scrap of paper, with the right of the de-fendant to go behind it and attack the petition for vagueness, in-sufficiency, and on all other grounds that could have been interposed had not the default judgment been rendered.

A defendant may introduce and cross-examine witnesses in con-testing the amount of the damages, but can not disprove facts in the petition admitted by his failure to plead. *O'Conner* v. *Brucker,* 117 *Ga.* 451 (43 S. E. 731); *Pittman* v. *Colbert,* 120 *Ga.* 341 (47 S. E. 948); *Jenkins* v. *Whittier Mills Co.,* 20 *Ga. App.* 828 (93 S. E. 530); *Whittier Mills Co.* v. *Jenkins,* 23 *Ga. App.* 328 (98 S. E. 236). "On the trial of a suit for unliquidated damages, in which the defendant is in default, the effect of the default is the same as if every item and paragraph of the petition had been proved

by testimony and judgment had been rendered thereon, save only as to the amount of the damages claimed; and while the defendant has the right to contest this, in doing so he is not privileged to deny or dispute any of the material facts so adjudicated against him." *Whittier Mills Co.* v. *Jenkins,* supra. It seems clear therefore that the only duty resting upon the plaintiff in the case at bar was that of showing the amount of his damage, the case having been marked in default. In the *Whittier* case it appeared that when the case went back for trial after having been to this court, a motion to strike the plaintiff's petition was made, which motion was the same as a general demurrer. It was overruled, and Jenkins, J., in rendering the opinion of the court, said that this was proper. There was no motion to strike in the case at bar, but at the conclusion of the testimony the defendant made a motion for nonsuit, it not appearing from the record on what ground the motion was made. This motion was granted. In *Kelly* v. *Strouse,* 116 *Ga.* 872 (43 S. E. 280) Cobb, J., said: "The nonsuit of the Georgia practice corresponds in its office and effect to the demurrer to the evidence of the common law. On such a demurrer the only question is whether the evidence is sufficient in law to maintain the issue in fact made by the pleadings; *and no exception can be taken to any defect in the pleadings, as the demurrer does not extend to them.* [Italics mine.] . . If the evidence supports the issue made by the pleadings, it is proper to overrule a demurrer to the evidence, or a motion for a nonsuit in the nature of such a demurrer, but it is not thereby adjudicated that the pleadings are in law sufficient to authorize recovery. . . 'Proving a case as laid' will prevent a nonsuit, and may possibly prevent a motion for a new trial from being granted on the ground that the verdict is contrary to the evidence, but it will not authorize a recovery unless the case as laid so authorizes. . . A defendant who passes over, without demurring, a petition which is fatally defective in that it does not set forth a cause of action may still attack the same on this ground by an oral motion to dismiss the case at any time before verdict; and after verdict, by motion in arrest of judgment made during the term at which the judgment was rendered; or by assigning error on the judgment by a direct writ of error sued out in due time; or within three years from the date of the judgment, by motion to set aside." Mr. Justice Cobb further said: "We do not now see

any good reason why an objection to a petition or plea, that it is bad in substance, should not be raised by objecting to evidence being introduced thereunder, or by moving to rule out all evidence introduced in support of the same." In *Jossey* v. *Stapleton, 57 Ga.* 144, it was said: "There was no error in overruling the defendant's motion for a nonsuit because the plaintiff's cause of action was not set forth with sufficient clearness and distinctness. If the plaintiff's [defendant's] objection had been well founded, it might have been good cause for special demurrer to the plaintiff's declaration, or to have objected to the plaintiff's evidence under it; but it was not a good ground for a nonsuit."

From these authorities it is clearly apparent, that from the view taken of the case by the majority of this court, a nonsuit was not the proper motion, and for this reason the judgment of the lower court should be reversed. If the petition on its face was fatally defective, some of the remedies above set forth might be available to the defendant, but not a nonsuit. *Evans* v. *Josephine Mills,* 119 *Ga.* 448 (46 S. E 674) ; *Bibb Mfg. Co.* v. *Bashinski,* 40 *Ga. App.* 172 (149 S. E. 82) ; *Rountree* v. *Seaboard Air-Line Ry. Co.,* 31 *Ga. App.* 231 (120 S. E. 654). The defendant, in law, confessed the truth of the allegations made in plaintiff's petition by his failure to plead. He could only in the then state of the record contest the amount of the damages. He might, following the procedure in the case of *Whittier Mills Co.* v. *Jenkins,* supra, have made a motion to strike. This he failed to do. He could have made motion in arrest at the term at which the verdict was rendered. This he failed to do. I am not prepared to agree that the petition sets forth no cause of action. It may not be well pleaded, it may contain conclusions of law and forced inferences, but under § 5657, the entering of a case in default confesses the truth of the allegations made. If the plaintiff can admit, as he must by failure to plead, that the defendant conspired with others wilfully and maliciously to procure another to breach a valid contract with him, and that such action was part of a scheme entered into between the defendant and others, and that he has thereby sustained damage, and escape liability, of course no cause of action is set forth. However, under the decision of our Supreme Court in *Luke* v. *Dupree,* 158 *Ga.* 590 (supra), such facts as set forth above constitute a good cause of action. The petition might have been subject to

special demurrer; it may not have been well pleaded; it may state conclusions without fully setting out the facts on which the conclusions are based, but after default such defects could not have been taken advantage of by a motion for nonsuit. The defendant admitted the execution of the bond as set out in the petition, and it was not necessary that it be introduced in evidence. Therefore, there was no need that the original be accounted for. I think the court erred in granting a nonsuit.