LEOLES *v.* LANDERS *et al.*

No. 11796. MAY 13, 1937. REHEARING DENIED JULY 10, 1937.

*Lanham & Parker* and *Grover C. Powell,* for plaintiff.

*J. C. Savage, C. S. Winn, Bond Almand,* and *J. C. Murphy,* for defendants.

RUSSELL, Chief Justice. Dorothy Leoles, a minor child twelve years old, by her father as next friend, instituted mandamus proceedings directed to the members of the Board of Education of the City of Atlanta, to compel her reinstatement as a student at the Crew Street School, one of the schools belonging to the Atlanta Public School System, and under the supervision and control of the respondents. The respondents "have inaugurated in the school system of the City of Atlanta an exercise or ceremony during which all pupils of the said schools are required to salute the United States flag." This the petitioner refused to do, "giving as her reasons the following: Petitioner and her father are members of a religious organization known as 'Jehovah's Witnesses,' who sincerely believe that God's word and teachings forbid them to worship any image, emblem, person, or thing, save and except Almighty God; she refused to salute the flag for the sole reason that she believes that to do so is an act of worship of

an image or emblem; she did not refuse to pledge allegiance to her country; she is a good and loyal citizen of the United States and of the City of Atlanta; she believes in the American form of government." Upon the failure of the petitioner to salute the United States flag, and upon her continued refusal so to do, she was expelled from said school and barred from attending any of the public schools of Atlanta. The respondents filed their general demurrer; and the case is before this court upon exception to the order of the judge sustaining said demurrer and dismissing the petition.

There is no question as to the propriety of the plaintiff's remedy being by mandamus, if the petition otherwise sets forth a cause of action. *Board of Public Education* v. *Felder*, 116 *Ga.* 688 (43 S. E. 56); *McCaskill* v. *Bower*, 126 *Ga.* 341 (54 S. E. 942); *Wilson* v. *Stanford*, 133 *Ga.* 483 (4) (66 S. E. 258); note in 39 A. L. R. 1020. So the controlling "questions of law involved is whether the Board of Education of Atlanta has the legal authority to expel from the public schools of the city a student" who intentionally and continuously refuses to comply "with the rules of the board requiring all students to salute the flag of the United States." The Board of Education of the City of Atlanta is invested with the power and authority of supervising and regulating the schools comprising the public-school system of said city, and with the right and authority to make and enforce such rules as are consonant with the law of this State. It is the policy of the State to provide free public schools for the youth of this State and to compel their attendance thereupon. Under the constitution of this State it is provided that "There shall be a thorough system of common schools for the education of children, as nearly uniform as practicable, the expenses of which shall be provided for by taxation, or otherwise. The schools shall be free to all children of the State." Code, § 2-6601. "Admission to all common schools shall be gratuitous to all children between the ages of six and 18 years residing in the subdistricts in which the schools are located." § 32-937. The provisions of the public-school law, and of our constitution on the subject, in so far as pertinent, are applicable to public common schools within the City of Atlanta, and under the supervision and control of the board of education of that city, in that said school system is not

entirely independent, but relies in part upon the receipt of school funds from the State. See *Peake* v. *Board of Education of Cuthbert*, 177 *Ga.* 476 (170 S. E. 488). Under our law, children between the ages of eight and fourteen years are compelled, except as excused and exempted as therein provided, to attend continuously, for at least six months of each year, some public school of the district or city in which the child resides; but such attendance shall not be required where the child attends for the same period of time some other school giving instruction in the ordinary branches of the English education. Code, § 32-2101. Prosecution may be had for failure to comply with this Code provision; and where a child resides in a city it is the duty of the municipal board of education to inquire into the non-attendance, and institute or cause to be instituted the necessary prosecution. §§ 32-2102, 32-9906. Furthermore, it is the policy of this State, through instruction in schools by patriotic teachers, to instill the youth thereof with the principles of American government and patriotic duty. "All schools . . in any manner supported by public funds shall give instructions in the essentials of the United States constitution and the constitution of ·Georgia, including the study of and devotion to American institutions and ideals, and no student in any school or college shall receive a certificate of graduation without previously passing a satisfactory examination upon the provisions and principles of the United States constitution and the constitution of Georgia." Code, § 32-706.

The General Assembly of 1935, on March 26, 1935, by resolution provided: "Whereas, in order to perpetuate the principles of free government and preserve the high ideals upon which this Nation was founded and upon which our constitutions rest, it is necessary that the fundamental principles of patriotism and the ideals of Americanism be inculcated into and cultivated in the minds of our children; and whereas the public-school teachers and other employees of this State wield an influence upon the lives and minds of Georgia children second only to that of their parents; and whereas the State has been and is being flooded with propaganda and literature which seek the destruction of the high principles of government which ought to be perpetuated: Therefore be it resolved by the General Assembly of Georgia (the Senate and House of Representatives concurring), that every teacher in the

584

public schools of this State, whether elementary, high school, college or university, and all other employees of the State or subdivision thereof, drawing a weekly, monthly, or yearly salary, shall, before entering upon the discharge of their duties, take and subscribe a solemn oath to uphold, support, and defend the constitution and laws of this State and of the United States, and to refrain from directly or indirectly subscribing to or teaching any theory of government or economics or of social relations which is inconsistent with the fundamental principles of patriotism and high ideals of Americanism. Be it further resolved, that the form of such oath be prescribed by the State Superintendent of Schools, and the oath of each teacher shall be filed in the office of the Superintendent of Schools of the county or other school system in which such teacher is employed; other employees shall file their oath with the department in which they might be employed, and shall be annually renewed. Be it further resolved, that no teacher or employee who shall fail or refuse to take and subscribe such oath shall be employed in any school, college, or university or other office or position of this State, or be paid from the public-school fund or by any other public fund. Be it further resolved, that any person violating the above and foregoing provisions shall be guilty of a misdemeanor, and shall be discharged immediately from his or her position." Acts 1935, p. 1305. The same legislature on March 28, 1935, passed a resolution declaring that "it is a part of the duty of every patriotic citizen to pledge allegiance to the flag of our country, and whereas every man, woman, and child of this State owes a similar allegiance to the flag of Georgia," and requiring that the State flag be displayed in all public schools, and upon public occasions, together with the national flag, and that the citizens be requested to pledge allegiance thereto. Acts 1935, p. 1253. It appears that the use of the free public schools of this State and of the City of Atlanta is a privilege extended to the parents or guardians of children upon compliance with the reasonable regulations imposed by the proper school authorities; and the courts of this State and of other jurisdictions having a free public system of education have repeatedly held that it is within the power and authority of the governmental bodies of such schools or systems of public schools to suspend or expel pupils therefrom upon violation of reasonable

and lawful regulations. In *Samuel Benedict Memorial School* v. *Bradford,* 111 *Ga.* 801 (36 S. E. 920), it was ruled that a child might be expelled from school where she refused to write a certain paper, upon express direction by her father not to do so.

It appears in this case, that, under the rules and regulations imposed by the city board of education, every school comprising the public-school system of the city must have at a certain time or times a patriotic ceremony in which all students attending the school are supposed to take part, and that during such exercise every student participating must "salute the flag of the United States." The plaintiff was expelled because of her absolute and repeated refusal to salute the flag, and she seeks to compel the respondents, who are in charge of the public schools of Atlanta and promulgate rules and regulations governing the schools of the city, the teachers and the pupils thereof, to revoke their order expelling her from the Crew Street School, one of the system of common schools in Atlanta, and refusing to admit her unless she should obey the regulations imposed regarding the saluting of the flag of the United States. It is contended that such action on the part of the school authorities denies to the plaintiff the equal protection of the law, due process of law, and further infringes the provisions of the State constitution prohibiting the establishment of religion and securing to her religious freedom, and seeks to compel her to act in disobedience to her religious beliefs and teachings. Code, §§ 2-112, 2-113, 1-801, 2-103, 1-815. With the foregoing contentions we can not agree. The United States is a democratic country with a republican form of government. Code, § 1-407. It is a land of freedom. However, those who reside within its limits and receive the protection and benefits afforded to them must obey its laws and show due respect to the government, its institutions and ideals. The flag of the United States is a symbol thereof, and disrespect to the flag is disrespect to the government, its institutions and ideals, and is directly opposed to the policy of this State. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Code, § 1-801. It has been held that this constitutional restriction on Congress contains no limitation on the power of the State as to making any law respecting the establishment of religion or prohibiting the free exercise thereof. *Swaf-*

*ford* v. *Keaton,* 23 *Ga. App.* 238 (98 S. E. 122), citing *Mack* v. *Kime,* 129 *Ga.* 1, 16 (59 S. E. 184, 24 L. R. A. (N. S.) 675). However, "Every State in the Union has in its constitution a provision denying to the civil authority the right to control or interfere in any way in matters purely ecclesiastical. Each individual within the jurisdiction of the United States . . has a right to determine for himself all of those questions which relate to his relation to the Creator of the Universe. No civil authority can coerce him to accept any religious doctrine or teaching, or restrain him from associating himself with any class or organization which promulgates religious teaching. Whether he shall adopt any religious views, or, if so, what shall be the character of those views, and the persons with whom he shall associate in carrying out the particular views, are all questions addressed to his individual conscience, which no human authority has the right, even in the slightest way, to interfere with, so long as his practices in carrying out his peculiar views are not inconsistent with the peace and good order of society." *Mack* v. *Kime, Swafford* v. *Keaton,* supra. Under the Georgia constitution, "All men have the natural and inalienable right to worship God, each according to the dictates of his own conscience, and no human authority should, in any case, control or interfere with such right of conscience." Code, § 2-112. However, it has been held by this court that an ordinance of the City of Rome requiring the reading of the King James version of the Holy Bible in all the public schools of that city, and the offering of daily prayers therein, does not violate the fundamental rights and provisions of the constitution referred to above. See *Wilkerson* v. *Rome,* 152 *Ga.* 762 (110 S. E. 895).

So those choosing to resort to the educational institutions maintained with the funds of the State are subject to the commands of the State. The board of education of the City of Atlanta is a governmental agency, and those wishing to avail themselves of the free education provided by the public schools of Atlanta are amenable to the reasonable commands of its supervising body, the city board of education. See Hamilton *v.* Regents of the University of California, 293 U. S. 245 (55 Sup. Ct. 197, 79 L. ed. 343). "The penance of the command of" the rule and regulation of the board of education of said city, requiring the

students of the public schools thereof to salute the flag of the United States, in no common-sense view thereof really interferes with plaintiff's religious freedom. It is little enough to expect of those who seek the benefits of the free education offered in the public schools of this State and cities thereof, that they show their respect for the flag of the United States, which is symbolic of American institutions and ideals, by saluting the same. The act of saluting the flag of the United States is by no stretch of reasonable imagination "a religious rite." It is only an act showing one's respect for the government, similar to arising to a standing position upon hearing the National Anthem being played; and would we denominate this action as a religious rite? So for a pupil to salute the flag of this country is just a part of a patriotic ceremony, an act of respect to the institutions and ideals of the land that is affording them a free education and a safe and bountiful place to live, and is not a bowing down in worship of an image in the place of God. It is, as we have seen, in keeping with our legislative policy towards public schools, and it is a reasonable requirement of all children "attending the schools established at the public expense." A child of school age is not required to attend the public institutions maintained by the public, but, as we have seen, under the law they may, if they choose, attend a suitable private school. Those who do not desire to conform to the commands "of this regulation can seek their schooling elsewhere." See Herring v. State Board of Education (N. J.), 189 Atl. 629.

We are cited in the brief of counsel for the plaintiff to a case from California, which we do not approve, but which is not at all like this case. It was there pointed out that there was no law or regulation requiring the flag to be saluted, and that all the children of the school were not so required. It is our opinion that the board of education of Atlanta was acting within its lawful authority in expelling the plaintiff in this case, and that the regulation requiring all the students attending the public schools of the city, supported by the public funds, to "salute the United States flag" was not unreasonable and did not violate any of the provisions of the constitution, and did not infringe any rights of the plaintiff preserved by the constitution of this State or of the

588

United States. The ruling in the fourth headnote does not require elaboration.

The judge did not err in dismissing the petition for mandamus on general demurrer.

*Judgment affirmed.* *All the Justices concur.*