## 26129. LAYSON v. ODOM.

DECIDED JUNE 16, 1937.

*R. C. Jenkins,* for plaintiff. *M. F. Adams,* for defendant.

GUERRY, J. Ernest Layson filed suit against Ben Odom for slander. He alleged that in the presence of Charlie Carroll, R. D. Richter, and Calvin Legget the defendant stated: "Ernest Layson is stealing my timber, and cutting it and bringing it to Eatonton and Monticello and selling it," and "Ernest Layson is cutting my timber, and taking it to Monticello, Georgia, and selling it," thereby charging and accusing petitioner of a crime under the laws of Georgia, to wit, larceny. The defendant entered a general denial, and by amendment alleged that the language alleged to have been used by him was used in the investigation of a matter of business and in the legitimate investigation to protect his own interest and the interest of the persons to whom he was speaking, and was privileged. The jury found in favor of the defendant. The evidence disclosed that Charlie Carroll and Mr. Richter had bought some timber from Ben Odom. The plaintiff was employed to cut it and haul it and bring it to Carroll and Richter in Eatonton, Georgia. On Saturday they usually paid for the timber cut; and on the Saturday when it was alleged the slander was committed Mr. Odom came to Carroll's place of business to see about being paid. Carroll testified: "About what I remember he said was, he believed Mr. Layson was taking some of his timber to Monticello and selling it. I understood Mr. Odom to mean just what he said, that he really thought Mr. Layson was taking some of it. I just replied to Mr. Odom I believed I would go and check up on it." Calvin Legget was present and heard part of the conversation between Carroll and Odom. The

defendant stated that he told Mr. Carroll that "I had been up to see Mr. Ernest Layson, and that word had come to me that you had better see about your timber. It is not going to Eatonton; it is going to Monticello. It is not going down to Carroll and Richter's mill there." The defendant denied that he told Carroll that Layson was stealing his timber and carrying it to Monticello. He testified: "I went to Mr. Carroll and told him I would give him orders to stop cutting it. I wanted him to get another man to cut it and haul it. . . The reason I gave for wanting Layson to stop was that I had heard that the timber was going to Monticello."

The Code, § 105-709, declares: "The following are deemed privileged communications: . . (3) Statements made with the bona fide intent, on the part of the speaker, to protect his own interest in a matter where he is concerned." "The privilege thus given by the law must not be used as a cloak for venting malice; and if the statement is not made in good faith, in promotion of the object for which the privilege is granted, the party defamed has a right of action." Sheftall v. Central of Ga. Ry. Co., 123 Ga. 589 (51 S. E. 646). Code, § 105-710. "The statement must be no broader than the interest to be subserved demands. The persons to whom the statement is published must be limited to those to whom the interest to be promoted requires that the information be given. . . Mere publication to a stranger will not always destroy the privilege, if it appears that the communication, prima facie privileged, was made in the hearing of third persons not legally interested, when the presence of such persons was merely casual and not sought by the defendant." Sheftall v. Central Ry. Co., supra. In the present case it became a matter for the determination of the jury whether Carroll, to whom the statements were made, was so interested in them as to make them privileged; the plaintiff's evidence showing that he was an employee of Carroll, was cutting and hauling the timber for Carroll from the lands of the defendant, and that the defendant was being paid therefor as the timber was cut by the plaintiff and hauled to Carroll and Richter to be checked. We hold the testimony sufficient to warrant the verdict on that theory. The statement made in Legget's hearing was made casually as a part of the conversation that was in progress when Legget came into Carroll's place of

business. Under the view we take of the case it becomes unnecessary to consider the special assignments of error in reference to the rejection of certain testimony. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*