A96A1299. FIRST UNITED CHURCH, INC. et al. v. UDOFIA et al.
(479 SE2d 146)

BEASLEY, Chief Judge.

The First United Church, Inc., d/b/a Sanctified Mount Zion Church of Nigeria in the United States ("church"), along with several of its native Nigerian members, Esenyie, Emah, Ibanga, and Udo, appeal the entry of default judgment in the sum of $500,000 against them jointly and severally in favor of each of the plaintiffs/appellees, plus $10,800 in special damages to plaintiff/appellee George. Defendant Umanah is not an appellant, and thus the judgment stands unreviewed as to him. Two former members and four non-members of the church, all of whom are natives of Nigeria, Udofia, Massodi, Effiong, Akpan, Etim, and George brought suit alleging the defendants slandered them and conspired to continually defame them.

The complaint alleged that in the course of a New Year's Eve church service, the individual defendants intentionally and maliciously announced, or instigated an announcement, to the congregation that each of the plaintiffs "was a witch and had practiced evil deeds upon family and fellow Church members," and that one of the defendants "and others" repeated these statements before a wider audience on January 9, 1994, at another of the church's services. The conduct was alleged to be malicious, wanton, and oppressive. The evil

deeds included practicing witchcraft, acts of bodily harm, thievery, causing infertility, stealing United States government files to harm a fellow member, and child abuse.

The complaint further stated that under Nigerian law, practicing witchcraft is punishable by imprisonment which leads to ostracism and even death in some areas of the country. The plaintiffs maintained the accusations have subjected them to ridicule, contempt, and ostracism among the Nigerian community in Atlanta and in their home states in Nigeria, resulting in some instances in substantial business losses. When defendants failed to answer, the court entered default judgment against them, finding that the statements were "not strictly an ecclesiastical matter" and that "the slanderous remarks far exceeded the confines of the Church." Since the allegations were not denied or otherwise defended as to liability, and the default judgment was not set aside, the allegations are taken as true. *Stroud v. Elias*, 247 Ga. 191, 193 (275 SE2d 46) (1981); *Summerour v. Medlin*, 48 Ga. App. 403 (1) (172 SE 836) (1934). An unreported bench trial on damages resulted in the judgment for the amounts stated.

1. The first enumeration is that the trial court erred in ruling that defendants failed to timely raise the issue of subject matter jurisdiction. Thereby, the court did not rule on the issue.

The trial court was obliged to inquire into its own jurisdiction as a threshold matter, even if the defendants failed to properly raise this issue below. OCGA § 9-11-12 (h) (3); *McDonnell v. Episcopal Diocese of Ga.*, 191 Ga. App. 174, 175 (381 SE2d 126) (1989). "The civil court cannot take jurisdiction of an ecclesiastical issue even if the parties present it for resolution, because the First Amendment prohibits such action by the civil judicial system." Id. at 176. Courts do not have power to extend their jurisdiction, which is set by constitutional or statutory law. Subject matter jurisdiction may not be waived by the parties or the court. *Bowers v. Estep*, 204 Ga. App. 615, 616 (1) (420 SE2d 336) (1992).

The civil court did have jurisdiction to entertain the complaint, as it did state a cause of action for which relief may be granted. It is true that "civil courts have no power or authority to interfere in the internal affairs of a religious organization concerning doctrines, faith, or belief." *Sapp v. Callaway*, 208 Ga. 805, 810 (7) (69 SE2d 734) (1952), citing *Stewart v. Jarriel*, 206 Ga. 855, 856 (6) (59 SE2d 368) (1950). Thus the civil courts will not inquire into or determine the validity of the expulsion of a member from a church having a congregational form of government, as stated in *Sapp*. But here the statements about the plaintiffs were not done in the course of an investigation of their church membership, and plaintiffs do not seek civil court relief in the form of return to membership, which would be

outside the court's competence. Instead, they seek civil redress for intentional torts of slander. This does not involve inquiry into and decision concerning questions of " 'doctrine, discipline, ecclesiastical law, rule, custom, church government, faith [or] practice of the church.' [Cit.]" *Gervin v. Reddick*, 246 Ga. 56, 59 (5) (268 SE2d 657) (1980).

Even where a church legitimately undertakes investigation of alleged misconduct on the part of its members and charges are privileged communications, all are not protected from civil suit. See OCGA § 51-5-9. There is no privilege for charges which are actually known to be false and are made maliciously and wilfully with the purpose of injuring another. *Swafford v. Keaton*, 23 Ga. App. 238, 239 (3) (98 SE 122) (1919). See also *Etchison v. Pergerson*, 88 Ga. 620 (15 SE 680) (1892), where a cause of action for slander was recognized for allegedly false reports of adultery to a church committee by one church member about another. Compare *Monahan v. Sims*, 163 Ga. App. 354, 359 (2) (294 SE2d 548) (1982), where the allegedly defamatory information was privileged as matters evolved during an investigation pertaining to canonization of a priest and were not improperly published broader. More fundamentally, the court lacked jurisdiction because the suit involved a purely ecclesiastical matter.

Not so here, where the statements were made to the whole congregation and were not in the context of an ecclesiastical tribunal. Unlike *Monahan*, plaintiffs did not seek civil redress for a decision by the religious organization. Instead, they sought a civil remedy for a civil wrong, the violation of their civil right not to be publicly slandered, and this required no entanglement with the internal affairs of a religious organization. Compare also *Crosby v. Lee*, 88 Ga. App. 589 (76 SE2d 856) (1953), where the alleged defamation, a libel, was made in the course of expulsion proceedings in connection with the plaintiff in his church affiliations. This related to church discipline, to which the plaintiff subjected himself by becoming a member of the church, and was not actionable. *Serbian Eastern Orthodox Diocese &c. v. Milivojevich*, 426 U. S. 696, 713 (96 SC 2372, 49 LE2d 151) (1976); *Kedroff v. St. Nicholas Cathedral &c.*, 344 U. S. 94, 116 (73 SC 143, 97 LE 120) (1952); *Gonzalez v. Roman Catholic Archbishop &c.*, 280 U. S. 1, 16 (50 SC 5, 74 LE 131) (1929); *Watson v. Jones*, 80 U. S. 679 (13 Wall. 679, 20 LE 666) (1871).

Child abuse, inflicting bodily harm, thievery, and stealing government files constitute crimes under the law of Georgia. To falsely accuse one of committing a crime constitutes the tort of slander. OCGA § 51-5-4 (a) (2). Such conduct is not protected by the doctrine of separation of church and state by utterance as testimony during the course of a church service. An examination into the claims of plaintiffs would not require an impermissible inquiry into church

doctrine, faith, discipline, governance, or other ecclesiastical matter.

Thus, as to all charges against plaintiffs except that they were witches and practiced witchcraft, the complaint stated a cause of action which the court was competent to adjudicate. As to these two charges, they related to religious faith, belief, and practice. In *Roberts v. Ravenwood Church &c.*, 249 Ga. 348 (292 SE2d 657) (1982), the Georgia Supreme Court recognized that a church whose members are commonly referred to as witches and warlocks is a religious organization practicing the Wiccan faith, so that its property used for religious worship was entitled to exemption from ad valorem taxation. The court refused to inquire into the merits of truth of its religious beliefs, in obedience to the First Amendment. In the instant case, on the other hand, plaintiffs consider civilly slanderous the statements that they are witches and practice witchcraft. To try the truth of such charges would harken back to the early days of this nation's life, when the treachery of witchcraft trials blackened judicial dockets. The fact that the allegations are admitted in this case, by the default, does not vest the trial court with subject matter jurisdiction when it would not lie were the allegations denied.

There is no transcript of the trial, and it appears that the trial court exercised jurisdiction over this aspect of the case and awarded damages partially on this foundation, because the court rejected the challenge to subject matter jurisdiction. The court ruled, without differentiating the statements or refusing to exercise jurisdiction over some of them, that "the statements . . . [were] not strictly an ecclesiastical matter." Apparently the court considered the statements as a whole. To the extent that damages were bottomed on slander for charging plaintiffs with being witches and practicing witchcraft, it was error. To the extent that damages were founded on charges of crime, it was not error. The case must be remanded for the trial court to reconsider the issues of damages accordingly.

2. Defendants are correct that the judgment must be reversed as to the defendant church itself altogether. Although plaintiffs alleged that the church conspired with its members to slander them, "[t]he doctrine of respondeat superior does not apply in slander cases." *Lepard v. Robb*, 201 Ga. App. 41, 42 (410 SE2d 160) (1991). Plaintiffs did not allege or show by any record evidence that the church "expressly ordered and directed [defendants] to say those very words." (Punctuation omitted.) *Church of God v. Shaw*, 194 Ga. App. 694 (1) (391 SE2d 666) (1990); *Ekokotu v. Pizza Hut*, 205 Ga. App. 534, 536 (1) (422 SE2d 903) (1992). As stated in *Lepard*, supra at 42, "a corporation is not liable for the slanderous utterances of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff." The same would apply to utterances of a church

member.

Moreover, the complaint does not state an actionable claim against the church. Allegations of slander by individuals "and other leaders" of the church do not express a claim against the church itself as a separate entity. The count alleging a "continuing conspiracy" to defame between the church as a separate entity, the individual defendants, and "as yet unnamed individual defendants" fails in addition because " '[c]onclusory allegations by the plaintiff of conspiracy, malice, and defamation, are insufficient — in the absence of substantiating fact or circumstances, to raise a material issue for trial.' [Cit.]" *Ekokotu*, supra at 536 (2).

To the extent the alleged conduct of the church contributed to the amounts awarded jointly and severally, the judgment must also be revised accordingly.

3. Defendants contend that they were entitled to the qualified privilege accorded to communications which are "made in good faith in the performance of a legal or moral private duty." OCGA § 51-5-7 (2). Defendants base this contention on their assertion that the statements were made as testimony or confession during a worship service and thus were a church activity, and cite *Leggett v. Macon Baptist Assn.*, 232 Ga. 27, 31 (205 SE2d 197) (1974), as support. That being so, defendants argue, plaintiffs were required to show actual malice, citing OCGA § 51-5-9. It provides: "In every case of privileged communications, if the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action."

*Etchison v. Pergerson*, supra, relied on by defendants to show they had a privilege, does not support them. There the Supreme Court explained that the testimony of a witness in a church trial against a fellow member is privileged under the predecessor of OCGA § 51-5-7 (2). In the first place, the statements in the instant case were not made in a church tribunal in the course of an investigation of alleged misconduct of church members. Second, defendants cannot show good faith because, by their default, they admit falsity and maliciousness. Thus *Flanders v. Daley*, 120 Ga. 885, 889 (4-5) (48 SE 327) (1904), does not support defendants either, as good faith was conclusively absent. Even if the statements about plaintiffs to the whole congregation on the two occasions indicated were privileged communications "intended to express adoration and homage for the Deity," *Leggett*, supra at 31, the complaint alleged malice and that element was thus proved by the default.

4. Defendants allege error in the trial court's conclusion that the issue of qualified privilege was untimely raised. We have considered the issue on its merits above, and thus this enumeration is moot.

Moreover, the court was correct, in that the defendants defaulted and thereby lost all defenses and admitted liability. OCGA §§ 9-11-12; 9-11-55 (a). Raising a defense in a motion for new trial is too late. When a defendant is in default, he is estopped from contesting the merits. See *Cooper v. Brock*, 77 Ga. App. 152, 156 (1) (48 SE2d 156) (1948).

5. The final enumeration of error is that there was no slander because there was no publication beyond that which was qualifiedly privileged. As set out above, defendants cannot claim the protective cloak of privilege. Moreover, the undenied complaint alleged that the false accusations subjected plaintiffs to "ridicule, contempt and ostracism among the Nigerian community in the Atlanta area, nation-wide, and in . . . Nigeria." Defendants cannot take comfort from the cited case of *Layson v. Odom*, 55 Ga. App. 868, 869 (192 SE 75) (1937), which quotes an earlier case for the proposition that publication to a stranger does not destroy a privilege if the presence of such persons was merely casual and not sought by defendant. In this case the defendants cannot stand on a privilege.

6. Because the judgment is reversed for the reasons stated, we do not address the enumeration which asserts that the judgment is excessive. That issue can be raised anew if the new judgment arguably exceeds the bounds of the law.

*Judgment affirmed in part and reversed in part and case remanded with direction. Birdsong, P. J., and Blackburn, J., concur specially.*

BLACKBURN, Judge, concurring specially.

I concur with the majority's conclusion that the trial court had subject matter jurisdiction to adjudicate the plaintiffs' claims regarding the defendants' allegations of child abuse, inflicting bodily harm, thievery, and stealing government files. However, I disagree with the majority's finding that the trial court impermissibly based its award of damages in part upon matters over which the court did not have jurisdiction, and which conclusion was the basis of the reversal of the trial court.

The damages award was entered in this case following a bench trial, and the language of the trial court's order clearly indicates that it recognized the difference between claims ecclesiastical in nature and issues "not strictly . . . ecclesiastical." Absent a showing to the contrary in the record, this Court presumes that the trial judge correctly separated the enforceable claims from the matters involving church doctrine and applied the pertinent law. There is no evidence in the record that the trial court's findings were based on anything but the legitimate claims recognized by the majority: allegations of

child abuse, inflicting bodily harm, thievery, and stealing government files.

While the majority concludes that because a default judgment was entered for the plaintiffs, the trial court impermissibly based its award on religious matters, there is no factual basis in the record of the unreported hearing to support such a conclusion. The majority inappropriately bases its result on a determination that the trial court based its award in part on many of plaintiffs' claims which involve matters over which this Court has no jurisdiction. Without regard to the matter of ecclesiastical jurisdiction, such "ecclesiastical" allegations simply state no cause of action in tort under Georgia law. These claims could not be the basis for any award in tort without regard to the setting in which the conduct occurred, ecclesiastical or otherwise.

I agree with the majority that the judgment must be reversed with respect to the defendant, First United Church, Inc. The trial court erred in denying the church's motion for new trial, because the complaint upon which the default judgment was based failed to state a claim against the church. This is true without regard to the ecclesiastical setting in which the torts occurred and without resort to the majority's "ecclesiastical" analysis which is unnecessary and inappropriate. If the "ecclesiastical" comments were not slanderous, their utterance did not constitute slander, and there was no tort arising therefrom.

Because we have reversed the trial court's holding as to First United Church, Inc., and it is not possible to determine to what extent such defendant's conduct contributed to the court's joint and several award against the collective defendants, I agree that the trial court's order must be vacated and remanded to the trial court for its review of its award, consistent with this opinion. Thereafter, the parties would be entitled to appeal the issue of excessiveness of the award which we have not addressed here at that time as may be appropriate.

I am authorized to state that Presiding Judge Birdsong joins in this special concurrence.

DECIDED DECEMBER 5, 1996.

*Michael L. Wetzel*, for appellants.
*James D. McGuire, Birgit G. Nomura*, for appellees.