JAMES *et al. v.* KELLEY *et al.*

1. The facts, that an administrator's sale of land was had in the month of August, that the auctioneer who cried the property for sale did, on request of the administrator, cry a specific sum as a bid on the land for the widow of the intestate, who was not present, and that, such being the best bid, the widow thereby became the purchaser, do not afford to the other heirs at law sufficient grounds to set aside such sale, it not being alleged that any discretion was given to the auctioneer, or that he had authority to bid for the widow any other or different sum.

2. Though an equitable petition may in general terms characterize such a

transaction as a "so-called sale" and as "a trick and a fraud," yet where it is manifest that the petition undertakes to set up all the facts relied on to establish this conclusion, and they amount to no more than as indicated in the preceding note, such petition is not good even as against a general demurrer.

Submitted March 23, — Decided March 25, 1899.

Equitable petition. Before Judge Gober. Milton superior court. February term, 1898.

·*J. P. Brooke*, for plaintiffs.

*T. L. Lewis* and *Abbott, Cox & Abbott*, for defendants.

LITTLE, J.   James and another filed a petition in the superior court of Milton county, against B. E. Kelley, administrator of B. M. Kelley, and Nancy Kelley, making substantially the following case:   The intestate died in 1887, owning a tract of land in said county, which was described.   He left surviving him eight heirs at law, two of whom were the plaintiffs, and two the defendants.   After the death of the intestate, the defendants remained on the land and received the rents and profits for a number of years.   Petitioners in 1895 filed a petition to the ordinary of the county, praying that administration of the estate of the intestate be vested in the clerk of the superior court.   When said petition came on for a hearing, the defendant B. E. Kelley claimed the right to be, and was, appointed such administrator.   He made application for leave to sell the land belonging to his intestate, and an order was duly granted for him to do so.   He advertised the same for sale on the first ·Tuesday in August, 1896, before the court-house door at the county-seat of Milton county, prescribing that the terms of the sale should be half cash, and the other half to be due on December 1, 1896, with interest at the· rate of eight per cent.   At the time and place of sale an auctioneer, who was employed by the administrator to cry the land, announced the sale and read the advertisement.   The auctioneer then publicly announced that he was authorized to cry a bid for the widow, meaning Nancy Kelley, defendant, of three hundred dollars for the land.   No other bid was made, and Nancy Kelley was named as the highest bidder.   She was not present at the place of sale, nor in the town.   The petition further alleges,

that the administrator did all in his power to aid Nancy Kelley in procuring the lands, had the bid made for her, and that such bid was not one third of the value of the land; that the administrator told the auctioneer to announce that he was authorized to cry a bid of three hundred dollars for the widow, seeking thereby to induce others not to bid; that there were others present who came to bid, but did not do so because they did not desire to appear as bidding against the widow. The petition further alleges, that it was the purpose of the defendants to defeat petitioners in acquiring their interest in the land, and that the advertisement and sale of the land in the middle of the summer, when such sales are rarely made and persons generally are not prepared to purchase, and having the auctioneer to cry the bid for the widow for a sum less than one half the value of the land, were the means used by the administrator to defraud them of their interest in the land; that his purpose was that he might continue to enjoy the use of the same. The petitioners allege that they do not know whether a deed was made by the administrator under such sale, but pray that the sale be declared null and void, and the administrator ordered to resell the same; and if any deed has been made conveying the same to Nancy Kelley, that it be cancelled. To this petition the defendants demurred generally. The court sustained the demurrer and dismissed the petition; and the plaintiffs excepted.

It is claimed on the part of petitioners, that the facts set out showed such fraudulent conduct on the part of the administrator in conducting the sale that it should be set aside; and we are referred to a number of decisions of this court, showing that the utmost fidelity on the part of an administrator in the sale of the property of the estate is required. The principle is fully and entirely conceded. The administrator is a trustee, and as such he must exercise the utmost good faith in his administration, and he is not allowed to promote his own personal interest to the injury of the heirs at law. The point is insisted on, that if the administrator is allowed to represent the bidder in making the first bid at a sale, it is certainly allowable for him to make the second bid, and eventually become the pur-

chaser. The case of *Mayor of Macon* v. *Huff*, 60 *Ga.* 221, is referred to as authority to support this contention. An examination of that case, however, discloses that this court held, in effect, that public policy forbade that the mayor of a city should make a contract with the city council of which he was the president, by which he should be paid an annual sum for fencing, draining, and keeping a certain park in repair for the period of five years, when it was the official business of such mayor to see that such a contract was faithfully performed; and that the city was not legally bound thereby. The principle on which this, as well as many cases both of our own and other courts were decided is, that a man can not be a judge in his own case, and that it makes no difference how fair such a contract may be, public policy condemns it. We are also referred to a number of cases as authority for the principle that an administrator can not buy at his own sale, and that a deed made pursuant to such purchase, though in the hands of a third person who purchased from him with notice, may be set aside. We concede the correctness of the rule contended for, and the binding authority of the cases cited. It may be stated generally that sheriffs, auctioneers, and others who are legally authorized to make sales at public outcry represent the sellers of the property, and, in consequence of such representation, can not become purchasers at the sale so made. In the case of an administrator who purchases at his own sale, the rule is, that the sale is voidable at the option of any one of the heirs, if application is made in time. But the rules invoked by the plaintiffs in error, and the principles decided in the cases cited, do not, in our opinion, require, under the allegations made in the petition, that the sale of which complaint is made should be set aside and the deed cancelled. It does not appear from the petition that either the administrator or the agent employed by him became the purchaser at such sale. On the contrary, it is alleged that the widow was the purchaser. It was practically decided in the case of *Bond* v. *Watson*, 22 *Ga.* 637, that an administrator might appoint an agent to sell. In other jurisdictions this power has been denied him. In the case referred to, however, it was held that, if the administrator made an agent

to sell and that agent became the purchaser for himself or another, the sale might be repudiated by the parties in interest. Applying the principle ruled in that case to the facts stated in the petition, we find that the auctioneer who made the sale of the land in controversy was the agent of the administrator, and of course the acts of this agent were binding on the principal, and if the agent became the purchaser either for himself or another, then it was the right of the plaintiffs in error to repudiate the sale and have it set aside. But the petition here shows that neither the agent nor the administrator became the purchaser, and the misapplication of the principle which governs occurs in confusing the crying of a bid with the fact of a purchase.

We do not at all understand that an administrator may not, after a sale has been duly advertised in pursuance of lawful authority, receive in good faith, from any one who can not personally attend at the time and place of sale, a bid for the property so to be sold. Indeed, in Rorer on Judicial Sales, 2nd ed. § 745, it is said: "It is not, in itself, an objection to a bid at a sheriff's sale of land on execution, that it is made by letter, provided there be no unfairness about it, and it be publicly cried as bids usually are. If there be no advance on a bid so offered, the officer will be justified in selling on it as he would be in selling on a bid orally made, all other circumstances being the same. But a creditor has a right to insist on all the forms. If, however, the bid be not publicly cried at the appointed place of sale, but received and privately noted in the house instead of at the door or place appointed, or there be other evidence of collusion or unfairness, the sale will be set aside." This we take to be the correct rule. It is altogether different from a transaction where the agent appointed to sell proceeds himself, without crying an authorized bid, to become the purchaser. In the one case, prospective purchasers are as much informed as to who is the bidder and the amount so bid as if the person making the bid was present and offered it personally. In the other, no notice is given as to who is the bidder nor the amount bid, and in this latter event it would be entirely in the power of the agent selling, if he was invested with a discretion

to buy, by regulating his own bid according to the circumstances which surround him, to defeat the right of the creditors where it was an execution sale, or of the heirs at law where the sale was made by an administrator, to have such property fairly and openly sold for the best price obtainable. But we take it that the numerous cases to be found in our books, notably those of *Carr* v. *Houser*, 46 *Ga.* 477, *Flury* v. *Grimes*, 52 *Ga.* 341, *Harrison* v. *McHenry*, 9 *Ga.* 164, and *Coleman* v. *Maclean*, 101 *Ga.* 303, are not to be held as authority that any trustee may not in good faith receive, and announce at the time and place of sale, a bona fide bid communicated with the purpose and for the object of being a bidder at the sale. In the case of *Harrison*, supra, the lower court held, in effect, that a sheriff could, at his own sale, become the agent of an absent purchaser and buy the property for that person at his own sale. It was that ruling that the court reversed, and called attention to the fact that the question whether the sheriff could not act as the agent of a purchaser to make a *definite bid*, where no discretionary powers are conferred, was not made by the record. The petition alleges, in the present case, that the bid was cried immediately after offering the property for sale and reading the advertisement, and that the crier in doing so announced that he was authorized to cry a bid of three hundred dollars for the widow. The fact that she was not present did not prevent any one in attendance from knowing that she was the bidder just as fully as if she had been personally present. The bid was a definite one, and, so far as the petition alleges, the seller was invested with no discretionary power as to the purchase of the land. The fact that the land was sold in the month of August does not show any fraud in the sale. The legal requirements do not restrict such sales to any particular months, nor any given season of the year. The administrator was proceeding to sell under an order duly granted, after full advertisement, at a time and place authorized by law. The widow had a right to become a bidder. She could do so by being personally present or by otherwise communicating a definite bid. No cause appears why the land did not bring a larger sum, except that the persons present did not care to bid against the

widow. Exactly the same thing would have operated on them had she been present and offered her bid. The charges of fraud and collusion other than the foregoing, and the intent on the part of the administrator to defraud petitioners in such sale, are made in general terms, with no other specific acts alleged than those which have been enumerated. The rule is, that the pleadings must state facts and not legal conclusions; and fraud is never sufficiently pleaded except by a statement of the facts upon which the charge is based. General charges will not be considered. *Tolbert* v. *Caledonian Insurance Co.,* 101 *Ga.* 741. For these reasons, the petition presented did not set forth a cause of action, and the court committed no error in sustaining the demurrer to the same.

*Judgment affirmed. All the Justices concurring.*