## LUKE *v.* DuPREE *et al.*

1. It is actionable maliciously and without justifiable cause to induce one to break his contract with another to the damage of the latter. The term "maliciously" means any unauthorized interference or any interference without legal justification or excuse; and ill will or animosity is not essential.
2. The petition sets forth an action in tort for which each defendant could be sued alone or all jointly, and for this reason a suit could be brought in the county of the residence of either of the defendants.
3. The petition sufficiently alleges that contracts have been broken, that the defendants either conspired to procure their breach or did in fact procure their breach, and that the plaintiffs have been injured in consequence of such breaches procured through conspiracy.
4. The allegations of fraud are not too general, the petition setting out the specific acts upon which such general allegations of fraud are made.
5. The petition is not multifarious.

No. 4282. JULY 19, 1924.

Equitable petition. Before Judge Ellis. Fulton superior court. February 5, 1924.

W. L. & John O. DuPree and John A. Carlton filed their petition against J. A. Manget and Magnolia Kerr, of Fulton County, and J. C. Luke and Mattie Luke, husband and wife, of Irwin County, and, in the first count thereof, made these allegations: The defendants are jointly and severally liable to the plaintiffs in the sum of $12,524.60, for which they pray judgment against each

and all of the defendants, jointly and severally. On March 30, 1922, J. C. Luke entered into a contract with plaintiffs, which is as follows:

"This agreement made and entered into this the 30th day of March, 1922, between J. C. Luke, of Irwin County, Ga., party of the first part, and W. L. & John O. DuPree and J. A. Carlton, all of Atlanta, parties of the second part.

"Whereas the party of the first part is exchanging a farm in Irwin County, Ga., for the Pontchartrain Apartments, located at 561-563 Ponce de Leon Ave., Atlanta, Ga., and is not paying the parties of the second part the regular real-estate commission for said transfer: It is therefore agreed that the party of the first part is to list exclusively with parties of the second part the Pontchartrain Apartments for resale, and is to give them 50% of all money received over and above $50,000 for the equity of the party of the first part, whenever said Pontchartrain Apartments may be resold. W. L. & John O. DuPree are to handle regularly the renting and collection of the rent of said Pontchartrain Apartments until the same may be resold.

"In witness whereof, the parties have hereunto set their hands and affixed their seal the day and year above written." Signed by the parties named, and attested.

John A. Manget listed his farm in Wayne County, Ga., known as the J. C. Ritch farm, consisting of 2800 acres of land, more or less, including, among others, certain designated land lots, part of which is improved property in Odom, Ga., and all personal property owned and used in connection with said farm, including all live stock, farming tools, feed-stuff, and a 1922 crop growing on said farm, with plaintiffs for sale or exchange for property located in the City of Atlanta. Plaintiffs showed this farm to J. C. Luke, and interested him in the purchase thereof. Plaintiffs showed the Pontchartrain Apartments, belonging to Luke, to Manget, and interested him in the purchase of the same. After plaintiffs had brought Luke and Manget together and interested each in the property of the other, Manget and Luke got together and conceived the idea of trading between themselves, without the knowledge of plaintiffs, and thus cheating plaintiffs out of the commissions which they had earned when they procured purchasers ready, able, and willing to purchase said apartments and farm.

Manget and Luke traded the farm in Wayne County for the apartments in Atlanta on September 19, 1922, signing the papers on that date, although they had agreed to make the exchange several days prior thereto, the purchase-price of the apartments being $200,000 and the purchase-price of the farm being $87,000. The commissions of plaintiffs, earned on the sale of the apartments, according to the agreement above set out, were $8,174.60, and their commission on the sale of the farm was $4,350. Defendants not only tried to deal directly with each other and defraud plaintiffs out of their commissions, but further conspired to take the farm in Wayne County in the name of Mattie Luke, to cheat creditors of J. C. Luke; and as soon as petitioners learned of this conspiracy they filed suit in the superior court of Fulton County and prayed for an order restraining Luke from receiving property in the name of Mrs. Mattie Luke in exchange for the Pontchartrain Apartments. The defendants learned that the restraining order was to be served, hastened the consummation of the trade, and signed the deeds just before the sheriff served the same. Plaintiffs have paid the cost and dismissed that suit. On the same day plaintiffs filed another suit against Mattie Luke, to restrain her from selling or incumbering the Wayne County farm in any way until further order of the court, which suit was served upon her. Plaintiffs have paid the cost in this suit and dismissed it. After said suits were served, Manget knew he would be sued also for the commission on the sale of said farm. Manget, J. C. Luke, and Mattie Luke entered into a further conspiracy to cheat plaintiffs, by which each handed back the deeds executed by the others which had not been recorded, and agreed to call this trade off, which was an absolute sham for the express purpose of defrauding petitioners out of their commissions herein sued for. After Manget, J. C. Luke, and Mattie Luke had agreed among themselves to call off the trade, Magnolia Kerr entered into a conspiracy with them to purchase the Pontchartrain Apartments from Luke for a recited consideration of $143,000, and immediately convey the said apartments to Manget for a recited consideration of $143,000, which was not the real consideration in either deed, and this conspiracy was entered into to make the trade apparently pass through the hands of another party, to cheat petitioners out of their commissions. Manget fraudulently deeded to Magnolia Kerr the

farm in Wayne County which he had sold to Luke and fraudulently deeded to Mattie Luke, and Magnolia Kerr is either still holding the title apparently to said farm or she has deeded it to J. C. Luke or Mattie Luke, as plaintiffs are advised, for the consideration of $10,000, instead of $87,000 as agreed upon between John A. Manget and J. C. Luke. The pretended calling off of said trade and pretended transactions between Manget and Luke and between Manget and Magnolia Kerr and between J. C. Luke and Magnolia Kerr are fraudulent transactions for the express purpose of cheating plaintiffs out of commissions which they had earned on the sale of the property therein described. The indebtedness assumed by Manget on the Pontchartrain Apartments is $133,651.80, making the equity of J. C. Luke bring $66,339.20, and one half of that amount above $50,000 is $8,174.60. The regular commission on property located more than six miles from the center of Atlanta is 5%, and 5% of $87,000, the value of the Manget farm in Wayne County, is $4,350. Plaintiffs waived discovery and prayed judgment against all of the defendants jointly and severally for the sum of $12,524.60.

The second count of their petition is identical with the first, except that the damages sought under the second count are laid at $16,450; and a third contract is alleged, which is as follows: "I hereby agree to pay J. E. Kerr two hundred fifty thousand ($250,000.00) dollars on the following terms, viz.: Assume loan and money-purchase notes and accrued interest to the amount of $62,500 dollars, and convey by deed 2080 acres land, more or less, being land lots No. 195, 196, 220, 221, 241, and 222 located in Irwin County, Ga., including 12 head of mules, approximately 50 head of hogs, corn and feed-stuff to run the place this year, four 2-horse wagons, reaper and binder, two mowing-machines, rake, and all agricultural implements, also all plow-tools and harness needed to operate farm, valued at $139,500.00. He to assume a loan of $27,000.00 against farm, and I to give 10 notes of $7,500.00 each, 6½% interest, payable semi-annually, due on or before 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 years, for the following described property, to wit: No. 561 and No. 563 Ponce de Leon Ave., lot 120 x 200 feet, known as the Pontchartrain Apartments, with all improvements thereon.

"I have this day deposited with W. L. & John O. DuPree, real-

estate agents, for owner the sum of one thousand dollars as a part of the named purchase-money to bind this trade, a reasonable length of time being allowed for the examination of titles by my atty. If said titles are merchantable, I agree to make settlement at once; but if said titles are not merchantable and cannot be made so within a reasonable length of time, the said cash payment is to be returned to me and this trade cancelled.

"Each of us agree to pay a regular commission on our respective properties and are depositing $1,000.00 each with said W. L. & John O. DuPree, Agents, to be held by them to bind this trade.

[Signed] J. C. Luke."

"I hereby accept the above offer upon the terms and conditions therein named, and guarantee the titles to be good and merchantable, and agree to pay W. L. & John O. DuPree, agents, a commission on the gross amount as follows, viz: 5 per cent. on the first five thousand dollars and 2½ per cent. on the excess over the first five thousand dollars. Farm subject to inspection and approval.

"In event the buyer fails to pay for the property as stipulated above, then the amount paid in is forfeited and is to be kept by W. L. & John O. DuPree, as compensation for services rendered by them in the trade.　　　　　[Signed] J. E. Kerr.

"Farm inspected and approved April 1, 1922.　[Signed] J. E. Kerr."

The trade between J. C. Luke and J. E. Kerr was consummated on March 30, 1922, and J. E. Kerr paid the commission due W. L. & John O. DuPree on the completion of the trade; but J. C. Luke did not pay the $6,975 due them as a commission on the Irwin County farm. It being located more than six miles from the center of Atlanta, the commission was 5% of the value of the farm, to wit: $139,500, and instead of paying it, said Luke entered into the contract set out in the first count of the petition.

Mattie Luke, without waiving her plea to the jurisdiction, but expressly insisting thereon, demurred to said petition on the grounds: (1) Because it appears from the face thereof that the action was brought against her in the wrong county and that this court has no jurisdiction of her, in that she is a resident of Irwin County, while the action is brought in Fulton County, and there is no joint or joint and several liability or other ground of joinder

which would authorize her to be joined as party defendant in an action brought in Fulton County. (2) Because it sets forth no cause of action against her. (3) Because count 1 of said petition sets out no cause of action against her. (4) In count 1 is a misjoinder of causes of action, (*a*) the same setting out two actions ex contractu for commissions against Manget and J. C. Luke respectively, with an action ex delicto on the ground of conspiracy to defraud plaintiffs out of their alleged commission; (*b*) · said count joining an action on an alleged contract for commissions with J. C. Luke alone with an action on a wholly distinct contract for commissions against Manget alone. (5) Because of a misjoinder of parties plaintiff, in that Carlton has no right, title, or interest in or to the cause of action asserted against Manget. (7) Because of a misjoinder of parties defendant in count 1, in that this defendant is joined with J. C. Luke and Magnolia Kerr as defendants in an action on an alleged contract made by Manget alone to pay certain commissions, in which this defendant has no interest. Then follow various grounds of special demurrer. The court overruled all the grounds of demurrer, and Mattie Luke excepted.

*Philip Weltner* and *Elliott Cheatham,* for plaintiff in error.

*Hill & Adams* and *Colquitt & Conyers,* contra.

HINES, J. . (After stating the foregoing facts.)

1. Does the petition set forth a cause of action? In the first place it is insisted by counsel for the defendant that the petition does not set forth a cause of action for a conspiracy to cheat and defraud. In the view we take of this case it is not necessary to decide whether such a cause of action is set out or not. We are of the opinion that a cause of action on another theory is alleged; and for this reason it becomes unnecessary to deal with this contention of the defendant. It is actionable maliciously or without justifiable cause to induce one to break his contract with another to the damage of the latter. Angle *v.* Chicago &c. R. Co., 151 U. S. 1 (14 Sup. Ct. 240, 38 L. ed. 55) ; 12 C. J. 604, § 161; Wheeler-Stenzel Co. *v.* American Window Glass Co., 202 Mass. 471 (89 N. E. 28, L. R. A. 1915F, 1076) ; Walker *v.* Cronon, 107 Mass. 555; Moran *v.* Dunphy, 177 Mass. 485 (59 N. E. 125, 83 Am. St. R. 289, 52 L. R. A. 115) ; Beekman *v.* Marsters, 195 Mass. 205 (80 N. E. 817, 11 L. R. A. (N. S.) 201, 122 Am. St. R. 232, 11 Ann.

Cas. 332) ; McGurk *v.* Cronenwett, 199 Mass. 457 (85 N. E. 576, 19 L. R. A. (N. S.) 561) ; Bitterman *v.* L. & N. R. Co., 207 U. S. 205 (28 Sup. Ct. 91, 52 L. ed. 171, 12 Ann. Cas. 693) ; Dr. Miles Medical Co. *v.* John D. Park & Sons Co., 220 U. S. 373 (31 Sup. Ct. 376, 55 L. ed. 502) ; Faunce *v.* Searles, 122 Minn. 343 (142 N. W. 816) ; Mealey *v.* Bemidji L. Co., 118 Minn. 427 (136 N. W. 1090) ; Cumberland Glass Mfg. Co. *v.* DeWitt, 120 Md. 381 (87 Atl. 927, Ann. Cas. 1915A, 702) ; Schonwald *v.* Ragains, 32 Okla. 223 (122 Pac. 203, 39 L. R. A. (N. S.) 854) ; Bowen *v.* Speer (Tex. Civ. App.), 166 S. W. 1183 ; Twitchell *v.* Nelson, 126 Minn. 423 (148 N. W. 451) ; Knickerbocker Ice Co. *v.* Gardiner Dairy Co., 107 Md. 556 (69 Atl. 405, 16 L. R. A. (N. S.) 746) ; Raymond *v.* Yarrington, 96 Tex. 443 (72 S. W. 580, 97 Am. St. R. 914, 62 L. R. A. 962) ; Martens *v.* Reilly, 109 Wis. 464 (84 N. W. 840) ; Hendricks *v.* Forshey, 81 W. Va. 263 (94 S. E. 747, L. R. A. 1918C, 150) ; 3 Bl. Com. 142 ; London Guarantee &c. Co. *v.* Horn, 206 Ill. 493 (69 N. E. 526, 99 Am. St. R. 185) ; *Southern Ry. Co.* v. *Chambers,* 126 Ga. 404 (55 S. E. 37, 7 L. R. A. (N. S.) 926). The theory of this doctrine is that the parties to a contract have a property right therein, which a third person has no more right maliciously to deprive them of, or injure them in, than he would have to injure their property. Such an injury amounts to a tort for which the injured party may seek compensation by an action in tort for damages.

An examination of the authorities cited above will show that the term "malicious" or "maliciously" means any unauthorized interference, or any interference without legal justification or excuse. Personal ill will or animosity is not essential. So this court has held. *Employing Printers Club* v. *Doctor Blosser Co.,* 122 *Ga.* 509, 519 (30 S. E. 353, 69 L. R. A. 90, 106 Am. St. R. 137, 2 Ann. Cas. 694). Such examination will likewise disclose that this doctrine is not confined to contracts of employment alone, but extends to all contracts. A conspiracy is a combination to accomplish an unlawful end, or to accomplish a lawful end by unlawful means. *Brown* v. *Jacobs' Pharmacy Co.,* 115 *Ga.* 429, 433 (41 S. E. 553, 57 L. R. A. 547, 90 Am. St. R. 126). The breach of a contract is unlawful. It is unlawful for others, without lawful excuse, to induce the maker of a contract to break it, or to aid him in its breach ; and for the maker and others to com-

bine to break it is a conspiracy, which entitles the other party to the contract to his action against the conspirators for any damage which he may sustain.

There are respectable authorities which hold, that generally an action cannot be maintained against a person for inducing another to break his contract with the plaintiff; the consequence after all being only a broken contract, for which the party to the contract may have his remedy by suing upon it. Ashley *v.* Dixon, 48 N. Y. 430 (8 Am. R. 559) ; Brentman *v.* Note, 3 N. Y. S. 420; Boyson *v.* Thorn, 98 Cal. 578 (33 Pac. 492, 21 L. R. A. 233) ; Kimball *v.* Harman, 34 Md. 407 (6 Am. R. 340). Besides, it may seem anomalous that if a party to a contract breaks it, and is alone responsible for the breach, he can only be sued in an action ex contractu for the breach; but if he breaks his contract, and another induces him to break it or conspires with him to break it, or aids him in breaking it, both can be sued ex delicto, on the theory that both are liable for a tort perpetrated in pursuance of a conspiracy to break the contract. But the tendency of modern decisions is to hold them liable as conspirators. This is in harmony with sound morals. The case falls within the scope of section 4469 of the Civil Code, which declares: "In all cases he who maliciously procures an injury to be done to another, whether it be an actionable wrong or a *breach of contract,* is a joint wrong-doer, and may be sued either alone or jointly with the actor." Whoever wilfully assists in the doing of an unlawful act becomes answerable for all the consequences of such act. *Chattahoochee Brick Co.* v. *Goings,* 135 *Ga.* 529, 535 (69 S. E. 865, Ann. Cas. 1912A, 263). On the theory that the parties to a contract have a property right therein, any "act of another which unlawfully interferes with such enjoyment is a cause of action." Civil Code (1910), § 4470. It is true, as was held in the well-considered case of *Woodruff* v. *Hughes,* 2 *Ga. App.* 361 (58 S. E. 551), that where civil liability for conspiracy is sought to be imposed, the conspiracy itself furnishes no cause of action, and that the gist of the action is the damage and not the conspiracy. In the instant case the plaintiffs do not contend that the conspiracy of the defendants to break the contracts involved furnishes a cause of action; but they do contend that the breaches of these contracts were unlawful, and that, when the defendants conspired to commit these breaches and the

contracts were broken in pursuance of such conspiracy, a cause of action accrued to them. So we reach the conclusion, that, under the facts stated in the petition, the truth of which the demurrer admits, the petition sets out a cause of action; and the court properly overruled the grounds of general demurrer.

2. But the defendant, who is the plaintiff in error in this case, demurs on the ground that Fulton superior court was without jurisdiction of her person. As we have held above, the petition sets forth an action in tort for which each defendant could be sued alone or all jointly. The action being joint and several, and being one sounding in tort, a joint action could be brought in the county of the residence of either of the defendants. *Cowart* v. *Fender,* 137 *Ga.* 586 (73 S. E. 822, Ann. Cas. 1913A, 932).

3. This defendant further insists that the petition fails to show that any contract has been broken, that the defendants either conspired to procure any breach of contract or did in fact procure such a breach, and that it fails to show that the plaintiffs have been injured in any way through the alleged conspiracy. We think that the petition sufficiently makes these allegations, and that these contentions are without merit.

4. The defendant next urges that the allegations of fraud are general and not specific; and that for this reason the petition should have been dismissed upon general demurrer. It is true that in pleading fraud specific facts must be stated with due certainty. *Carswell* v. *Hartridge,* 55 *Ga.* 412; *Tolbert* v. *Caledonian Ins. Co.,* 101 *Ga.* 741 (28 S. E. 991). Charges of fraud and conspiracy cannot be made in general terms, without specific acts and facts being alleged. *James* v. *Kelley,* 107 *Ga.* 446 (33 S. E. 425, 73 Am. St. R. 135). The petition in this case alleges that the defendants conspired to cheat and defraud the plaintiffs. This general allegation, standing alone, would not be sufficient; and the petition would be subject to general demurrer if this naked averment were the only one made on this subject. But the petition sets out the specific facts upon which this general charge is based; and for this reason the petition does not violate the principle which provides for fraud and conspiracy to be specifically pleaded.

5. This defendant contends that the petition is multifarious for the reason that there are a misjoinder of causes of action and

a misjoinder of parties defendant. It is further insisted that suits upon contract are joined with suits sounding in tort. The plaintiffs are not suing Manget and Luke upon their contracts in which the latter employed the former to sell their real estate holdings and agreed to pay them commissions for these services; but they are suing in an action ex delicto, as we have undertaken to show above. This being so, there is not a joinder of causes of action ex contractu and ex delicto. The contracts are alleged for the purpose of showing the manner in which the alleged tort was committed, and for the further purpose of showing the amount of damages which the plaintiffs have sustained by reason of the commission of such tort. The petition is not multifarious for the reason that it sets out separate and distinct causes of action against separate and distinct defendants, or because it improperly joins parties defendant; but it is a suit based upon a single cause of action arising out of the breaches of contracts between the owners and the agents for the sale of these parcels of real estate, and for the payment of these agents for such services, which breaches were brought about by a combination and conspiracy entered into between the defendants to accomplish this purpose.

*Judgment affirmed. All the Justices concur.*