### 31645. ROOD *v.* NEWMAN *et al.*

DECIDED SEPTEMBER 6, 1947.

*William S. Shelfer, Young H. Fraser,* for plaintiff.

*Robert H. Jones, Alex M. Hitz,* for defendants.

FELTON, J. A. E. Rood, trading as A. E. Rood & Company, sued T. Newman and Jack Blaustein for damages for conspiring to induce J. Floyd Huey to breach his contract with the plaintiff, under the terms of which the plaintiff was to receive a $1000 commission for securing a purchaser for certain realty belonging to Huey. The property was to be sold for $15,000 so as to net Huey $14,000. The allegations of the petition are summarized in the reported case of *Rood* v. *Newman,* 74 *Ga. App.* 686 (41 S. E. 2d, 183). When the case was before this court on an exception to the sustaining of a general demurrer, this court reversed the ruling of the trial court, holding that the petition set forth a cause of action. At that time the court construed the petition as having alleged that the defendants conspired with Huey, the owner, to breach his contract with the plaintiff, and that in pursuance of the conspiracy he did so; or, that the defendants conspired to induce Huey to breach his contract by selling the property through the offices of a broker other than the plaintiff, and that this was an illegal or tortious act. We make the assumption that the court placed such construction on the petition for the reason that under no other construction could the petition have been held to set forth a cause of action; and the cases which the court cited as authority for its ruling lend strong support to this assumption. Those cases are *Luke* v. *DuPree,* 158 *Ga.* 590 (124 S. E. 13), and *Moore* v. *Roberts,* 55 *Ga. App.* 268 (190 S. E. 41). In the *Moore* case the plaintiffs had entered into a contract leasing a certain ginnery from a certain lessor and the contract precluded the lessor's making an inconsistent contract with another. The defendant in that case induced the lessor to breach the contract. Under such circumstances the defendant's inducing the lessor to breach her contract with the plaintiffs was tortious, and came within the meaning of Code, § 105-1207, "In all cases he who maliciously procures an injury to be done to another, whether it is an actionable wrong or a breach of contract, is a joint wrongdoer, and may be sued either alone or jointly with the actor." In the *Luke* case, *the owners* of the property involved were alleged to have conspired together to defeat the brokers' commissions after the commission had already been earned, and it was the owners of the properties who were sued

as conspirators, and who were alleged to have breached their contracts with the brokers.

Briefly, the evidence adduced on the trial of the case showed that J. Floyd Huey listed the property in question, a fresh-food store, with the plaintiff for sale, under a non-exclusive listing, under the terms of which the property was to be sold for $15,000 so as to net Huey $14,000, and $1000 would be paid to the plaintiff as his commission; or the property was to be sold for $8000 and the stock in the store would be inventoried and sold for value, and the plaintiff would be paid $1000 as a commission. In March, 1946, the plaintiff showed the property to T. Newman, who made an offer of either $12,500 or $13,000; there was some conflict as to the exact amount of the offer. This offer was rejected by Huey and T. Newman refused to increase his offer to $15,000. On April 11, 1946, another broker, N. Warshaw, sold the property to Jack Blaustein for $14,000. It appears that Morris Newman, brother of T. Newman and uncle by marriage of Blaustein, was financing the purchase of the property by Blaustein, and that Morris Newman borrowed $2000 from T. Newman for the purpose of lending this sum, together with other sums, to Blaustein to apply on the purchase-price of the property. It appears that, after the purchase by Blaustein, Morris Newman suggested to T. Newman that he, T. Newman, go into partnership with Blaustein in the operation of the food store, T. Newman being a good grocery man and Blaustein being a good meat man, if after a week's trial he found that he liked the idea. On April 17, 1946, T. Newman and Blaustein entered into articles of partnership, and the plaintiff brought this action to recover his alleged commission. On the trial the plaintiff testified: "I didn't think he [Huey, the owner of the property] conspired with these fellows [T. Newman and Blaustein] to beat me out of $1000. . . Well, we figured that it was a conspiracy between Jack Blaustein and T. Newman to get him in there that way." It appeared further that Huey knew nothing of any connection between Blaustein and T. Newman, and that the property was listed with both the plaintiff and N. Warshaw, and both T. Newman and Blaustein were looking at the property, each intending to purchase and operate the business under partnerships with different men. There was no evidence that T. Newman knew anything of Blaustein's intention to purchase the

property until after Blaustein had consummated the purchase.

This evidence does not support the allegations under the theory that the owner conspired with the defendants to defeat the plaintiff's commission, after he had earned it, and there was no evidence that the commission had been earned; and as to the conspiracy the plaintiff specifically denied that there was any conspiracy between Huey and the defendants. Nor does the evidence support the theory that the defendants conspired to induce Huey to break his contract with the plaintiff. Huey's sale of the property, innocently, to Blaustein through the broker, Warshaw, was no breach of Huey's contract. The plaintiff had never secured T. Newman as a purchaser ready, willing, and able to purchase upon the terms specified by Huey, under which the plaintiff was to sell the property. The plaintiff did not even have an exclusive listing of the property, much less an agreement that Huey himself could not sell the property if he chose. Nor, to go one step further—and assuming that the plaintiff's petition was laid solely on a conspiracy to defraud the plaintiff of his commission—does the evidence support such a theory. "A conspiracy, upon which a civil action may be based, is a combination between two or more persons, either to commit a tortious act, or to do some lawful act by methods constituting a tort. The conspiracy of itself does not constitute the cause of action, but the gist of the action, if one exists, is the tort committed against the plaintiff and the resulting damage." *Drummond* v. *McKinley*, 65 *Ga. App.* 145 (15 S. E. 2d, 535). While, to some minds, the facts and circumstances under which Blaustein purchased the property and later took T. Newman as a partner may have the earmarks of a conspiracy, their action, assuming for the sake of argument that they did in fact conspire to purchase the property, their purchase of the property upon better terms, i.e., for $14,000 instead of for $15,000, through another broker, cannot be said to constitute an actionable tort, and it was not unlawful for them to do a lawful act to save the $1000. The plaintiff's proof failed to establish his case, and the plaintiff not being entitled to recover under any theory of the case, the court did not err in granting the nonsuit and in dismissing the case.

*Judgment affirmed. Sutton, C. J., and Parker, J., concur.*