45824. CANAL INSURANCE COMPANY v. LAWSON.

Argued January 4, 1971—Decided February 4, 1971—
Rehearing denied February 24, 1971.

*Rogers, Magruder & Hoyt, J. Clinton Sumner, Jr.,* for appellant.
*Marson G. Dunaway, Jr.,* for appellee.

DEEN, Judge. ■ There is no dispute but that Miss Crabb first assured the Lawsons their total premium for the automobile liability insurance policy was $85, and that she thereafter either assumed the balance of payment herself because of the error or extended credit to them, and that she told them the total premium money had been sent in. If she is to be assumed as an independent broker to be the agent of the insured rather than the insurer, as seems necessary under *Code Ann.* § 56-801b (5), the case turns on her relations with Stringer & Company, the general agent of Canal Insurance Company. It is further undisputed that Stringer extended credit to Crabb and not to any of her insured clients, since its ledger sheet shows that amounts owing as well as amounts paid were kept only as totals with no effort to distinguish between the various policyholders, who appeared only as a charge or a credit on the Crabb account. But Stringer & Company went further than this—it advanced the money owing by the Crabb agency as net premiums on the various accounts. The testimony of the defendant's witness was as follows: "You say you already had advanced money to the various insurance companies

to cover their premiums, that was true with reference to Canal Insurance Company in this case too, wasn't it? A. Yes, sir. Q. In other words, when you charged Crabb Insurance Agency $182 less the commission you sent to Canal Insurance Company the W. K. Stringer's money for that policy, didn't you? A. Yes, sir. Q. And so after that it was just a matter of whether you were going to collect it back from Miss Emma [Crabb] or not, really, wasn't it? A. That's right. Yes, sir . . . Q. What I'm saying is, from time to time you sent out cancellation notices to the people who held insurance policies written by your company for the sole purpose of getting the policyholder to go to the local agent and punch them up to send you the money that they'd paid already on the premium, isn't that right? A. That might be right in the event that the insured had paid the local agent. We don't have any way of knowing what they have collected from their insured."

From the above and other evidence in the case it is clear that Canal Insurance Company, at the time the nonpayment notice was sent out in October, had actually collected the full yearly premium, advanced by Stringer and charged by it against Crabb. It is also clear that the Lawson collision, which occurred on the 171st day of the policy period, was covered under the $85 actually paid by the Lawsons (the net forwarding commission of $27.30 having been credited to Miss Crabb). This is true because Stringer-Canal would not have received the total premium of $182 but a net premium of this amount less the Crabb commission, or $154.70, so that $85 forwarded by Crabb would cover approximately 200 days of insurance. Therefore, both in October when Canal attempted to cancel the policy and on January 3, when the collision occurred, the Lawsons had paid a sufficient sum to keep the policy in force and had been extended credit for the balance and Canal had in fact received a full year's premium. The cancellation for nonpayment of premium was therefore ineffective, and although Canal under *Code Ann.* § 56-2430 might have effected cancellation at its option, such cancellation must be accompanied or followed by a tender of the return premium to the policyholder, which was not done. In any event, the extension of credit is a valid consideration for the issuance of the policy. *Fireman's Fund Ins. Co. v. Lindsey,* 32 Ga. App. 683 (124 SE 369); *Loflin v. Home Ins. Co.,* 40

Ga. App. 246 (149 SE 308); *Reeves v. Progressive Life Ins. Co.,* 85 Ga. App. 576 (69 SE2d 882). The direction of a verdict in favor of the plaintiff on this issue was proper.

■ Although the plaintiff's petition contained a prayer that the defendant insurer be required to defend the suit resulting from the January 3 collision, and the answer contained a defense that no proper "notice for proof of loss" was filed and therefore the insurer had no duty to defend this particular claim, nevertheless, a thorough reading of the transcript indicates that this issue was abandoned during the trial of the case. The court directed a verdict "that the cancellation of the policy was not effective and that the policy was in effect for the period of time stated in the policy." Only the issue of attorney fees was submitted to the jury. The defendant was certainly not entitled to a judgment in its favor on this issue as a matter of law under the evidence produced, and it failed both to object to the charge of the court on the ground that the issue was not submitted and to enumerate error on its omission from the charge. No reversible error appears as to this defense.

■ Plaintiff concedes that she is not entitled to attorney fees under *Code Ann.* § 56-1206, but contends that the verdict was correct under *Code* § 20-1404 because of the bad faith and stubborn litigiousness of the defendant. The "bad faith" referred to in these sections is not the same. *New York Life Ins. Co. v. Bradford,* 57 Ga. App. 657 (2) (196 SE 92). In actions on contracts, attorney fees under *Code* § 20-1404 may only be awarded where the contract was entered into in bad faith by the defendant in the first instance, or was procured by fraud and deceit. *McKenzie v. Mitchell,* 123 Ga. 72 (1) (51 SE 34). Treating this action as a mere breach of contract by an attempted unauthorized unilateral rescission, it becomes obvious that the case must be judged as of the time of the breach (the cancellation notice forwarded in October prior to the collision) and it was error to submit this issue to the jury.

*Judgment affirmed with direction that the award of attorney fees be written off. Bell, C. J., and Pannell, J., concur.*