57297. WACO FIRE & CASUALTY INSURANCE COMPANY v. PLANT et al.
57298. WATKINS MOTOR LINES, INC. v. PLANT et al.

SHULMAN, Judge.

In accordance with several "operating contracts," appellees-L. B. Plant and Plant Truck Service, Inc., contractors engaged in the business of transporting freight, leased trucks furnished with drivers to appellant-Watkins Motor Lines, Inc., a carrier engaged in the business of transporting commodities. After Watkins ceased to offer loads to appellees' truckers for shipping, appellees filed a complaint against appellant-Watkins

and its sister corporation, appellant-Waco Fire & Casualty Insurance Company. Count 1 sought damages in the amount of $56,338.09 for Watkins' and Waco's alleged breach of contract "by failing to act in good faith." Counts 2 and 3 incorporated the allegations of Count 1 and sought $200,000 in exemplary damages for appellants' alleged malicious conspiracy "to injure Plant's business and cause the termination of his written lease contracts." Neither Counts 2 nor 3 sought general damages. This appeal is from a judgment entered on a jury verdict finding Watkins and Waco jointly liable to appellees for $56,338.09 in general damages and $75,000 in punitive damages. As we agree with appellants' contention that the verdict is not authorized under any legal theory advanced by appellees, we reverse the judgment with direction that judgment notwithstanding the verdict be entered in favor of appellants.

1. Count 1 of appellees' complaint, as framed by the pleadings and developed by the evidence, asserted that Watkins (aided by Waco) had breached several operating contracts between Watkins and appellees by refusing to assign loads to the trucks which appellees had made exclusively available for Watkins' use and that appellees suffered a total loss of $56,338.09 therefrom. The losses demanded in Count 1 were developed by the evidence at trial as representing both unnecessary expenditures (office rental, salaries, etc.) due to the cancellation of operating contracts without timely notice and anticipated net profits under the operating contracts. Appellants' position that there can be no recovery under the operating contracts forming the basis of appellees' claim is well taken.

A. The operating contracts upon which appellees' action is founded have identical language. Relevant provisions governing the contractual duties assumed by Watkins follows: "1. Contractor [L. B. Plant or Plant Truck Service, Inc.] hereby agrees, upon request of Carrier [Watkins Motor Lines, Inc.], to use the equipment [listed] . . . and to furnish all labor to perform all the work necessary for the transportation of such commodities, including loading and unloading, and in such amounts as Carrier may provide. 2. Carrier agrees to pay Contractor

in accordance with the attached rate and service schedules for the full and proper performance of trips undertaken pursuant to this agreement by Contractor."

Although the contracts remained in force until cancelled by either party, Watkins was only obligated while the contract was in effect to ship commodities through Plant "in such amounts as [Watkins] may provide." There is no provision obligating Watkins to use any services of appellees during the contract period. The lease agreements do not provide that the equipment or the services of the drivers will be used at any time, or at all. See in this regard *Morrow v. Southern Express Co.,* 101 Ga. 810 (28 SE 998); *Sealtest So. Dairies Div. v. Evans,* 103 Ga. App. 835 (1) (120 SE2d 887); *Wedgewood Carpet Mills, Inc. v. Color-Set, Inc.,* 149 Ga. App. 417 (254 SE2d 421). See generally 43 ALR3d 1302 (7c).

"In this respect, the purported agreement was unilateral and, as to any unperformed portion of the agreement, unenforceable for want of mutuality." *Wedgewood Carpet Mills,* supra, p. 420. Accordingly, no recovery can be had for Watkins' failure to offer loads to truckers made available by appellees.

B. From the pleadings and the evidence, it appears that appellees were not seeking damages as to future performance. Rather, appellees were demanding recovery for losses allegedly sustained as a result of forced idleness, i.e., that period beginning with appellants' refusal to offer loads to appellees and ending with the formal cancellation of the purported contract (during which time appellees' trucks were allegedly exclusively committed and made available to Watkins). Appellees' contrary assertions notwithstanding, these damages are not compensable.

While appellees may be entitled to recover for that portion of the contract which had become executed by performance (trips undertaken pursuant to the agreement) or by such partial performance as would bind appellees under the contract (see *Sealtest So. Dairies Div.,* supra, Division 2), appellees here are seeking damages for unexecuted and unperformed portions of the agreement.

Watkins' acceptance of past services and the corresponding contractual obligations arising therefrom do not supply the necessary consideration so as to make

the operating contracts valid and enforceable as to unperformed portions. *Wedgewood Carpet Mills,* supra; *Morrow,* supra. Appellees' actions in making trucks and drivers exclusively available to Watkins were not intended by the parties to be such performance as would make the contract mutual and binding as to unperformed portions. See *Gunter Bros. Inc. v. Cooper Tire & Rubber Co.,* 87 Ga. App. 626 (74 SE2d 744). Nor did these actions cure the indefiniteness as to the quantity feature of the operating contracts. *Pierson v. General Plywood Corp.,* 76 Ga. App. 853 (1) (47 SE2d 605). Simply stated, Watkins is not legally obligated under a contract theory for unperformed services which were neither ordered nor accepted. *Durkee Famous Foods, Inc. v. Selig Co.,* 48 Ga. App. 711 (1) (172 SE 824). As to tort liability for breach of contract, see generally *Murphy Oil Co. v. Weir,* 145 Ga. App. 631 (244 SE2d 146); *Ga. Kaolin Co. v. Walker,* 54 Ga. App. 742 (189 SE 88).

2. The dispute between the litigants was apparently precipitated by certain affidavits submitted by appellees to the IRS. These affidavits tended to show that the drivers furnished with appellees' trucks occupied the status of independent contractors and not of employees relative to appellees. Watkins, concerned over its potential liability to IRS for social security taxes, considered these affidavits to be in contravention of the terms of the operating contracts.

Count 2 of the complaint in conjunction with Count 3 (which delineated the conclusory allegations in Count 2) sounded in tort and asserted that Waco, which only insured contractors hauling for Watkins, had interfered with the operating contracts by wrongfully cancelling appellees'. insurance under the pretense that appellees had violated their contract with Watkins. It was also alleged that ·Waco's action was in furtherance of a conspiracy between Watkins and Waco to assert economic pressure on appellees in order to force appellees to withdraw the affidavits to IRS.

A. On appeal, appellees assert that Counts 2 and 3 represent a claim against appellants for injuries to appellees' business attributable to tortious interference with the insurance contract issued by Waco to Plant. We

note that Counts 2 and 3, as framed by the pleadings, sought only exemplary damages and did not demand actual damages flowing from a breach of the insurance contract. At trial, appellants presented no competent evidence which would support a verdict for independent losses arising from any alleged conspiracy to interfere with the insurance contract. As the pleadings, as developed by the evidence and legal arguments in the trial court, did not adequately raise a claim for damages arising from an alleged conspiracy to interfere with the insurance contract, that theory may not be urged as forming a basis for the claim contained in Counts 2 and 3. *Sowell v. Douglas County EMC,* 150 Ga. App. 520.

B. The evidence shows that Counts 2 and 3 were seeking exemplary damages for appellants' alleged conspiracy to injure Plant's business by interfering with the operating contracts set forth in Count 1. This being so, these counts can fare no better than Count 1.

"In order for [appellees] to recover for unlawful interference with [their] contractual relations with [Watkins], there must have been an enforceable contract existing between the parties." *Wedgewood Carpet Mills,* supra, p. 421. As we have held the operating contracts to be unenforceable, it follows that there can be no recovery for any alleged interference with these contracts, and the trial court erred in refusing to direct the verdict as to Counts 2 and 3. Id.

3. The court erred in denying the motion for a directed verdict made by the defendants and in denying the motion for judgment n.o.v. Since this ruling constitutes a final disposition of these cases, we need not consider other grounds advanced by appellants as reasons for reversal.

*Judgment reversed with direction that a judgment notwithstanding the verdict be entered in favor of appellants. Quillian, P. J., Banke, Birdsong and Underwood, JJ., concur. Deen, C. J., McMurray, P. J., Smith and Carley, JJ., dissent.*

ARGUED FEBRUARY 13, 1979 — DECIDED JUNE 7, 1979 — REHEARING DENIED JULY 26, 1979 —

*Smith, Currie & Hancock, W. Dennis Summers, Martin, Kilpatrick & Davidson, Marcus B. Calhoun, Jr.,* for appellants.

*Charles A. Gower, John C. Stout, Jr.,* for appellees.

McMurray, Presiding Judge, dissenting.

L. B. Plant and Plant Truck Service, Inc. were engaged in the business of "leasing trucks furnished with drivers to Watkins Motor Lines, Inc., the carrier defendant." However, insurance had been purchased on all of these trucks involved in the leases with Watkins from the other defendant, Waco Fire & Casualty Insurance Company. Hence, there were two sets of contracts involved here: the contracts involving the leases of the trucks to Watkins and the contracts involving the insurance on these trucks. Based upon a dispute by and between the plaintiffs and Watkins as to the activities of the plaintiffs all of the contracts (insurance as well as the leasing contracts) were either breached, nullified or rendered void. Whereupon plaintiffs sued Watkins and Waco, inasmuch as alleged, "both breached its contracts with Plant by failing to act in good faith." Based upon the actions of the defendants, plaintiffs have sued for damages by reason of the acts of the defendants resulting from the breach of the contracts, interference with contractual relations, malicious conspiracy to injure one's business, and in Count 2 for exemplary damages resulting from the malicious conspiracy of the defendants "to injure Plant's business."

A trial was held and a verdict was returned by the jury finding the defendants "guilty," awarding plaintiffs general damages for certain losses and punitive damages in the amount of $75,000. Motions for judgment notwithstanding the verdict or in the alternative motion for new trial or reduction of damages were filed and denied. The defendants appeal.

While I agree that the leasing contracts were in all probability unilateral and unenforceable for want of mutuality, nevertheless I do not agree with the majority opinion and judgment in this case directing that the court

below enter judgment in favor of the defendants.

I call attention to the fact that there are two sets of contracts involved here, the so-called contracts of lease of the various trucks and the insurance contracts insuring the vehicles. The opinion as written deals only with the alleged unilateral contracts of lease as being unenforceable, but holding the plaintiffs were not entitled to recover for unlawful interference with plaintiffs' business in cancelling all of the contracts, insurance and otherwise. The insurance contracts were enforceable, and there was an issue of fact as to whether or not they were properly cancelled. The plaintiffs have shown evidence of an alleged conspiracy to interfere with plaintiffs' business as to the method in which these contracts were cancelled. See *Dale v. City Plumbing &c. Co.,* 112 Ga. App. 723 (1), 727 (146 SE2d 349); *Luke v. DuPree,* 158 Ga. 590 (124 SE 13); *Cook v. Robinson,* 216 Ga. 328, 329 (116 SE2d 742). I therefore cannot agree with the opinion as written directing that the court below enter judgment in favor of the defendants on the theory that there were no enforceable contracts existing between the parties authorizing the plaintiffs to sue. The suit was predicated on an alleged conspiracy to interfere with plaintiffs' business in breaching all of the contracts. Not all of the contracts were unenforceable, and it is clear that the insurance contracts were not cancelled in accordance with law. See *Canal Ins. Co. v. Lawson,* 123 Ga. App. 376 (1), 378 (181 SE2d 91); *Ga. Farm Bureau Mut. Ins. Co. v. Gordon,* 126 Ga. App. 215, 216 (190 SE2d 447); *American International Life Ins. Co. v. Hartsfield,* 147 Ga. App. 213, 215 (4) (248 SE2d 518). However, it is quite clear from the way in which the jury was authorized to consider the case that it was allowed to consider the same based on the breach of all the contracts. Hence damages were shown flowing from loss of business resulting from cancellation of the operating contracts (unilateral) which were commingled with the alleged damages resulting from the alleged destruction of plaintiffs' business arising out of the conspiracy and breach of the insurance contracts.

It is therefore my opinion that a new trial should be ordered. Clearly, the jury considered the case based upon the violation of the unilateral contracts as well as the

valid mutual insurance contracts. Erroneous instructions to the jury also resulted. The judgment is also based upon damages arising from computations as to business losses connected with the unilateral contracts which the defendant Watkins was not required to carry out with reference to the trucking activities.

I therefore respectfully dissent.

I am authorized to state that Chief Judge Deen, Judge Smith and Judge Carley join in this dissent.