## 66659. SHANCO INTERNATIONAL, LTD. et al. v. DIGITAL CONTROLS, INC. et al.

SHULMAN, Chief Judge.

Shanco International, Inc. ("Shanco"), Richard S. Shannon, and Michael Shannon appeal from a grant of summary judgment in favor of Digital Controls, Inc. ("DCI"), Michael Pace, Gregory McManus, and Michael Macke.

Suit was brought for breach of a written agreement entered into in January of 1981 by Richard and Michael Shannon and Michael Pace d/b/a Pace Age Technology ("Pace"), pursuant to which Pace was hired to design and develop a counter top video game conceived by Richard Shannon, and to produce four prototype and other machines for Shannon at agreed prices and terms. By a further contract executed the same date, the parties agreed that Pace would develop and manufacture the computerized, coin-operated video counter top games for the Shannons "for the specific purpose of marketing and selling these games throughout the world . . . Mr. Michael Pace and Pace Age Technology or any other company that Mr. Pace has any type of interest in, in any form, shape, or manner agrees not to market, sell or distribute the above said machine in any manner to anyone but Mr. Richard S. Shannon or Mr. Michael Shannon . . . [and] also agree to offer to Mr. Richard Shannon and Mr. Michael Shannon the privilege and right of first refusal to any and all types of video coin-operated computerized games that he or his company may make in the future." The agreements were silent as to the matter of ownership of the video games to be developed by Pace. However, while the Shannons devised the name "Little Casino" for the machines and all the machines shipped to customers bore a decal showing Shanco as producer and owner of the trade name and logo, the development of the underlying computer programming for the games and their manufacture was exclusively done by Pace.

In April of 1981, Macke, McManus and Pace formed DCI for the purpose of developing computer oriented technology. When Macke and McManus became aware that Shanco was distributing the Little Casino games under the agreements with Pace, they began negotiating contract terms to distribute the Little Casino games that DCI was to manufacture, but no agreement was reached. In May, Shannon also unsuccessfully proposed an agreement with Pace to assign all Pace's ownership rights in Little Casino to Shanco.

In July 1981, DCI began selling a more advanced model of Little Casino to Shanco on a sale-by-sale basis pending culmination of the parties' contractual negotiations, whereby Shanco supplied DCI with customer names and addresses and number of units ordered, and DCI

shipped the units directly to the customers. Payment for the units was ordinarily made by Shanco to DCI upon receipt by Shanco of the invoice for sale with proof of shipment. In conjunction with Michael Pace's employment with DCI, which consisted at the outset primarily of development of the Little Casino game, Pace assigned to DCI his copyright rights in both the original and any subsequent versions of the underlying computer programming of these games, and all units and programs supplied to customers by DCI bore its copyright notice. Pace continued to revise the computer programming of Little Casino for DCI, and current models were vastly improved over the prototype.

DCI initially assisted Shanco in marketing and distributing Little Casino, but became dissatisfied with Shanco's distribution procedures and the business relationship deteriorated. In November 1981, DCI advised Shanco by letter that it was the sole owner of the Little Casino game and that Shanco's ceasing to represent itself as owner and manufacturer of the game would be a condition of DCI's continued business dealings with Shanco. Shanco failed to comply with this demand and in December cancelled a 100-unit order on which DCI had already commenced production. Although DCI had never entered into a written contract with Shanco or the Shannons, on December 10 it sent a termination letter to Shanco due to the failure of the business relationship between the parties. On December 16, Pace also terminated his personal relationship with Shanco, and DCI sent a supplemental cancellation letter providing for a grace period during which DCI would fill any orders presented by Shanco which contained the name and address of the customer.

The complaint filed by Shanco and the Shannons alleged that these letters were an attempt by Pace and DCI to breach all agreements with them and to convert the "plans, designs, format and trade name" of Little Casino to their own use; and that the attempted breach of contract by Pace "was directly caused by the tortious efforts of defendants McManus, Macke and [DCI] to conspire to interfere with and destroy the contractual relationship between defendant Pace and plaintiffs." The prayers were for temporary injunction and $8,000,000 in damages.

Upon motion for summary judgment by all parties and consideration of briefs, affidavits, depositions, exhibits, pleadings and transcript, the trial court found that the agreements between Pace and the appellants were void and unenforceable; and that the idea appellants sought to protect was not sufficiently concrete in its development to be usable, and thus there could be no recovery for the alleged wrongful appropriation thereof.

1. We agree with the trial court that the restrictions imposed

upon Pace in the agreements with Shanco and the Shannons are unreasonable and constitute an invalid restraint of trade under the Georgia Constitution and OCGA § 13-8-2 (2) (Code Ann. § 20-504). Not only do these agreements fail to restrict the territorial limitations placed upon Pace, they also do not place any time limitation upon his obligations not to sell the Little Casino game to any purchasers except Shanco and to give Shanco the right of first refusal of all video machines which Pace, or any other company in which he has an interest, might develop in the future.

"Georgia law provides that contracts which tend to lessen competition or which are in restraint of trade are against public policy and are void. [Cits.] Nevertheless, a contract may be upheld if the restraint is reasonable and the contract is valid in other respects. [Cit.] While there are other factors that are involved in the reasonableness of the restraint of trade or tend to lessen competition [cit.], we find a clear violation from the lack of limitation as to territorial effect . . . Such a contract is overly broad, and the result is that it is not enforceable in this regard. [Cits.] Because the territory in which [Pace] was precluded from merchandising its product was too expansive, the restrictive covenant, the violation of which constituted the alleged breach of contract, also was too indefinite to be enforced by the courts. [Cit.]" *Wedgewood Carpet Mills v. Color-Set,* 149 Ga. App. 417, 421 (2) (254 SE2d 421). Accord, *Waco Fire &c. Ins. Co. v. Plant,* 150 Ga. App. 888 (1) (259 SE2d 95). It is also well established that "a contract not to practice a learned profession or engage in a vocation requiring special skill will not be enforced where there is no reasonable limitation as to the duration of the inhibition . . ." *Kutash v. Gluckman,* 193 Ga. 805 (Hn. 2(b)) (20 SE2d 128).

2. " 'In order for [appellants] to recover for unlawful interference with (their) contractual relations with [Pace], there must have been an enforceable contract existing between the parties,' *Wedgewood Carpet Mills,* supra, p. 421. As we have held the operating contracts to be unenforceable, it follows that there can be no recovery for any alleged interference with these contracts . . ." *Waco Fire &c. Ins. Co.,* supra, p. 892. See generally Welch and Ruff, "The Business Tort: Interference with Contractual Relationships of Business Expectations," 19 GBJ 66 (Nov. 1982). Since DCI never entered into any contract with Shanco or the Shannons, nor assumed the obligations of Michael Pace thereunder or ratified or adopted his agreements, any purported claims relating to a breach of contract by DCI are likewise without merit. See generally *Boss v. Bassett Industries,* 163 Ga. App. 246 (1) (292 SE2d 885).

3. We further agree with the trial court's ruling that no claim

for recovery for wrongful appropriation of an idea was presented, because the idea appellants sought to protect was not sufficiently concrete in its development to be usable.

In two recent cases this court has considered claims for relief for the misappropriation or conversion of an unpatented or unpatentable product or idea. *Monumental Properties &c. v. Frontier Disposal,* 159 Ga. App. 35, 38 (282 SE2d 660), involved a unique design for a garbage disposal system where "the plan, design and development of the automatic system originated with [Frontier], and Frontier understood that it divulged its plan in confidence to Monumental." Under these circumstances it was held that "Monumental had a duty not to take Frontier's plan and convert it to its own use, thereby causing injury to Frontier." Id., p. 37. In contrast, *Wilson v. Barton & Ludwig, Inc.,* 163 Ga. App. 721, 725 (296 SE2d 74), dealt with a more abstract idea, a business management concept which "did not create anything new to the real estate industry" but was merely "a new and better way of doing something." The theory of recovery was based on *Monumental Properties,* but this court adopted and set forth the essential elements of an action to obtain relief to recover for the wrongful appropriation of an abstract idea: (1) " '(T)he idea must be novel; (2) the disclosure of the idea must be made in confidence . . . (3) the idea must be adopted and made use of by the defendant [cit.]' . . . [and (4)] the idea [must] be sufficiently concrete in its development to be usable." Id., p. 723. Determining that "[t]he 'novelty essential to a protected property right (cannot) arise solely from the fact that something already known and in use is put to a new use . . .,' " id., p. 725, the *Wilson* court held that lack of novelty was fatal to appellant's claim for misappropriation of his idea.

In the instant case, Shannon admitted that he did not possess the technical knowledge to design the programming or electronic circuitry necessary to produce a video game, and never claimed to have produced any plans, blueprints or diagrams illustrating how Little Casino might be developed. His idea, as presented to Pace, was to expand universally known gambling card games to a video screen. It took at least six months from the time Shannon disclosed his idea to Pace until Little Casino became a marketable game, and the initial design was constantly improved. Thus, there was no showing that Shannon's idea was either novel or sufficiently concrete in its development to be *usable,* so as to be usurped and utilized by Pace and/or DCI as contemplated by the *Wilson* test, and the trial court correctly ruled that the evidence was "undisputed" that the idea was too abstract for protection.

4. Appellants' claims of quantum meruit and quantum vale-

bant as a basis of recovery for infringement of common law copyright and trademark rights were not raised or argued in the trial court and present nothing for review on appeal. *Salome v. First Nat. Bank of Atlanta,* 162 Ga. App. 394 (1) (291 SE2d 452). Upon their failure to set forth facts showing that there were genuine issues of material fact for trial, summary judgment was appropriately entered against appellants. *Meade v. Heimanson,* 239 Ga. 177 (236 SE2d 357).

*Judgment affirmed. McMurray, P. J., and Birdsong, J., concur.*

DECIDED NOVEMBER 21, 1983 —
REHEARING DENIED DECEMBER 2, 1983 — ▮

*James B. Gurley,* for appellants.
*Robert D. Feagin,* for appellees.